**Bernadette SCELTA, Plaintiff,**

v.

**DELICATESSEN SUPPORT SERVICES, INC., et al., Defendants.**

**No. 8:98–CV–2578–T–TGW.**

United States District Court, M.D. Florida, Tampa Division.

May 13, 2002.

Bernadette Scelta, pro se, Brooklyn, NY, David Montgomery, Montgomery & Walch Law Firm, Bradenton, FL, for plaintiff.

Mitchell C. Robiner, Ruder, McClosky, Smith, Schuster & Russell, PA, Tampa, FL, Ken Turkel, Williams, Schifino, Mangione & Steady, PA, Tampa, FL, William G. Salim, Jr., Moskowitz, Mandell, Salim & Simowitz, PA, Ft. Lauderdale, FL, Martin Hyman, Golenbock, Eiseman, Assor & Bell, New York City, for defendants.

### ORDER

THOMAS G. WILSON, United States Magistrate Judge.

In a prior Order, it was determined that the defendants were entitled to recover attorneys' fees and expenses from the plaintiff and from her attorney. This Order considers the amount of those fees and expenses. For the following reasons, the defendants Delicatessen Support Services, Inc., and Boar's Head Provisions Co., Inc., are entitled to recover attorneys' fees of $60,000 both from the plaintiff and from her attorney David P. Montgomery, for a total attorneys' fees award of $120,000. In addition, all defendants, as the prevailing parties, are awarded pursuant to Rule 54(d), Fed.R.Civ.P., and 28 U.S.C.1920, costs in the amount of $6,261.77, which is to be paid by the plaintiff.

### I.

A reasonable attorneys' fee is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In this calculation, the court should exclude hours that were not reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This "lodestar" may then be adjusted upward or downward based on other considerations, including the results obtained and the quality of representation. *Id.; Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994).

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988). With respect to rates, an applicant may meet this burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Id.* at 1299. In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303. With respect to hours, if an applicant's documentation "is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart, supra*, 461 U.S. at 433.

### A. Hourly Rates.

A first step in the computation of the lodestar is determining the reasonable hourly rate. The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir.1996). The party seeking fees bears the burden of establishing the market rate and should present the court with "specific and detailed evidence" from which it can determine the reasonableness of the proposed rate. *Norman v. Housing Authority of Montgomery, supra*, 836 F.2d at 1303.

In this case, the defendants seek compensation for the services of two law firms. Thus, the defendants were represented

here by the New York City law firm of Golenbock, Eiseman, Assor & Bell ("GEA & B"), a firm that has represented the defendants for many years. Individuals from that firm working on this case were attorneys Martin S. Hyman, Jacqueline G. Veit, Joel S. Tennenberg, Jose–Manuel A. deCastro, and Sydney R. Smith, and paralegal Ronald Horan.

The defendants retained as local counsel the Tampa law firm of Williams Schifino Mangione & Steady, P.A. ("Williams Schifino"). Working on this case from that law firm were attorneys Kenneth G. Turkel, Stephen Cohen, Jed Thomas and Shane Vogt, and paralegals Wendy Knipp and Judith Nielsen.

█ The plaintiff and her counsel do not challenge the rates, as adjusted, for any of the individuals. The law firm of GEA & B listed their rates as charged in New York City. Those rates are clearly higher than the rates charged by similarly experienced individuals in this area. The use of those rates would be problematic, since, as indicated, "[t]he general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 437 (11th Cir.1999).

However, Hyman, the lead attorney from that law firm, has filed an affidavit indicating that, as a matter of billing judgment, his law firm reduced its rates by thirty percent (Doc. 175, p. 2). Hyman asserts that this reduction would bring the rates in line with the prevailing local rates (*id.*). The plaintiff and her attorney do not dispute this assertion. Accordingly, the rates for GEA & B will be set at seventy percent of the rates set forth in

the Hyman affidavit.[1] Thus, the rates for the GEA & B attorneys and paralegal will be as follows (rounded to the nearest dollar):

| | |
|---|---|
| Martin S. Hyman | $245 |
| Jacqueline G. Veit | $186 |
| Joel S. Tennenberg | $133 |
| Jose–Manual A. deCastro | $126 |
| Sydney R. Smith | $119 |
| Ronald Horan (Paralegal) | $ 74 |

There was no dispute about the rates for the individuals from Williams Schifino. Those rates are (again taking the lowest rate when a range is stated):

| | |
|---|---|
| Kenneth G. Turkel | $185 |
| Stephen Cohen | $165 |
| Jed Thomas | $125 |
| Shane Vogt | $100 |
| Wendy Knipp (Paralegal) | $ 75 |
| Judith Nielsen (Paralegal) | $ 75 |

**B.** *Reasonableness of the Number of Hours Expended.*

█ The next step in the lodestar analysis is to determine what hours were reasonably expended on the litigation. In calculating this, the court should exclude excessive, unnecessary and redundant hours, and also time spent litigating discrete and unsuccessful claims. *Duckworth v. Whisenant, supra,* 97 F.3d at 1397. Further, a court is to exclude hours spent on distinct successful claims for which there is no statutory fee-shifting authority. *Northeast Women's Center v. McMonagle,* 889 F.2d 466, 476 (3d Cir.1989), *cert. denied* 494 U.S. 1068, 110 S.Ct. 1788, 108 L.Ed.2d 790.

█ " 'Objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *American Civil Liberties Union of Georgia v. Barnes, supra,* 168 F.3d at 428; *see also, Norman v. Housing Authority of Montgomery, supra,* 836 F.2d

---

1. As to three of the individuals a range of ten dollars has been listed. The rate will be based on the lower end of that range.

at 1301. Thus, generalized statements that the time spent was unreasonable or unnecessary are not particularly helpful and not entitled to much weight. *Norman v. Housing Authority of Montgomery, supra,* 836 F.2d at 1301. Accordingly, a fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is generally viewed as fatal. *See Gray v. Lockheed Aeronautical Systems Co.,* 125 F.3d 1387 (11th Cir.1997). Consequently, all hours as to which the plaintiff and her attorney have not made an objection will be accepted. As a corollary to this, because the plaintiff and her attorney have not disputed the defendants' computation of the totals and subtotals of the hours, the hours credited will be calculated simply by subtracting from those subtotals the hours that are determined to be excludable.

The plaintiff and her attorney have identified several categories of hours that they contend should be excluded. Specifically, they object that (1) time was included for work performed before the date of the pretrial conference, contrary to the prior Order; (2) there were multiple attorneys so that there was a duplication of work; (3) hours were claimed for travel time; (4) some of the work was merely clerical in nature; (5) some time entries lacked specificity; and (6) some time was spent on noncompensable issues. With these objections in mind, I have reviewed the spreadsheet prepared by plaintiff's counsel that sets forth the time entries and the corresponding objections. That review did not reveal any substantial reductions, with the exception of work by paralegals that, as described, appears to constitute clerical work that is not separately recoverable.

The plaintiff and her attorney object, first, that the defendants seek compensation for time expended before April 18, 2000. Although the time sheets of GEA & B included the whole month of April 2000, Hyman acknowledged at the hearing that

recovery for work before April 18, 2000, has not been authorized and stated that the firm's totals did not include work before that date (*see* Doc. 175, Ex. B). Accordingly, no reduction is necessary based on this objection.

 The plaintiff and her attorney object further that the number of attorneys involved in this case resulted in the duplication of work. For the period of time under consideration, work by GEA & B was prepared primarily by two lawyers (Hyman and Veit) and one paralegal. Work for Williams Schifino was done predominately by Turkel, with two other attorneys together (Cohen and Vogt) performing about the same amount of work, and with a substantial contribution by one paralegal (Knipp). There is nothing unreasonable about the defendants being jointly represented by their long-time New York counsel and by a local law firm. *See Johnson v. University College,* 706 F.2d 1205, 1207–08 (11th Cir.1983). Furthermore, it is not unreasonable to have different lawyers from those law firms perform different tasks. Those attorneys may all be compensated as long as they are not doing the same work and are being compensated for the distinct contributions of each lawyer. *Id.* at 1208.

 Moreover, time spent by lawyers conferring may be compensable. *See Review Publications, Inc. v. Navarro,* 1991 WL 252962, at *6 (S.D.Fla.1991). Here, Hyman explained at the hearing that conferences were necessary to coordinate the work among attorneys and paralegals. Time spent in that manner will be compensated. *National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1337 (D.C.Cir.1982). In addition, hours expended on conferences regarding strategies will be allowed. *Berberena v. Coler,* 753 F.2d 629, 633 (7th Cir.1985).

The time sheet prepared by plaintiff's attorney was reviewed in light of these

principles. That review did not reveal hours that appeared to constitute unreasonable duplication of effort. Accordingly, no reduction will be made on that basis.[2]

Moreover, any concern that, in general, there were excessive hours expended due to overstaffing is assuaged by the exclusion of all time prior to the pre-trial conference, a fifteen percent reduction to account for certain noncompensable issues, and a limitation based upon a financial inability to pay. These exclusions clearly prevent the attorneys' fee in this case from being too high due to a duplication of work.

■ The plaintiff and her counsel object to time spent traveling. This objection will be overruled. As previously explained, it was plainly reasonable for the defendants to employ their long-time New York counsel to represent them in this matter. Moreover, as Hyman explained at the hearing, this was cost-efficient during the discovery phase of this case, since many of the witnesses resided in the New York area. Especially in light of these circumstances, the defendants acted reasonably in deciding not to rely just on local counsel. Consequently, travel time is recoverable. *Johnson v. University College, supra,* 706 F.2d at 1208.

■ The plaintiff and her attorney also object to compensation for clerical work. This objection is primarily directed at the work of the paralegals. The Eleventh Circuit has iterated that the efforts of a paralegal are recoverable "only to the extent that the paralegal performs work traditionally done by an attorney." *Jean v. Nelson,* 863 F.2d 759, 778 (11th Cir.1988) (*quoting Allen v. United States Steel Corp.,* 665 F.2d 689, 697 (5th Cir.1982)). Where that is not the case, paralegal work is viewed as falling within the category of unrecoverable overhead expenses. *Allen v. United States Steel Corp., supra,* 665 F.2d at 697. In other words, work that is clerical or secretarial in nature is not separately recoverable. *See Knazavich v. Siglers Auto Center,* 2001 WL 1335772, at *3 (N.D.Ill.2001).

Here, the plaintiff's counsel correctly points out that there is a substantial amount of claimed time that was spent doing clerical and secretarial work, such as gathering materials, copying them, mailing them and refiling them. Such unrecoverable time amounts to 108 hours for Horan, and 72.2 hours for Knipp. These hours will be deducted from each individual's totals.[3]

The plaintiff and her attorney also object to the lack of specificity in the billing entries. This is a common problem in fee applications with respect both to time entries and to objections. My approach is to rule against a proponent of an entry or objection when the entry or objection is vague or unclear.

The problem with nonspecific time entries is more acute if there are certain issues in a case that are noncompensable. Here, there are potentially two such issues, namely, the battery claim and the

---

2. It did appear that two time entries for Stephen Cohen for August 21, 2000, reflect the same work, and that one of them is therefore an erroneous duplication. (*See* items 531, 532 of Montgomery spreadsheet). Accordingly, one hour will be deducted.

3. The item numbers on Montgomery's spreadsheet for these reductions are: 42, 48, 53, 55, 60, 65, 71, 76 (4.2 reduced to 3.5), 80, 87, 95, 109, 112, 115, 117, 123, 127, 128, 135, 160, 167, 170, 173, 176, 185, 190, 194, 206, 214, 222, 229, 230, 234, 245, 251, 257, 263, 269, 273, 275, 283, 289, 292, 298, 300, 303, 304, 307, 314, 319, 336, 341, 344, 348, 352, 355, 361, 364, 371, 375, 377, 380, 382, 390, 393, 399, 408, 413, 426, 445, 490, 495, 502, 509, 523, 526, 530, 533, 537, 538, 539, 544, 547, 552, 553, 555, 557, 559, 560, 561, 563, 566, 572, 573, 576, 580, 584, 588, 598.

identity of the plaintiff's employer. However, as explained below in connection with the next objection, noncompensability is being handled by reducing the total fee by a percentage. In light of that circumstance, there is no longer a concern here that noncompensable items will nonetheless be compensated due to nonspecific time entries. Thus, for example, there is no reason to think that an entry for "trial preparation" will cover time that should not be compensated. Consequently, no deductions have been made due to lack of specificity of time entries.

Lack of specificity can also create problems when a number of tasks are grouped under one time entry and some of the tasks are compensable and some are not. For example, item 42 on Montgomery's spreadsheet sets forth work by paralegal Horan that includes noncompensable clerical work and compensable paralegal work. In that event, the time for the entire entry will be excluded unless Montgomery on the spreadsheet agrees to credit a specific amount of time.[4]

■ Finally, the plaintiff and her attorney object to time spent on noncompensable issues. As indicated in the prior Order, it did not seem that time spent on the issues of battery and the plaintiff's employer should be compensable. The defendants have not argued to the contrary in their subsequent submissions. Accordingly, time expended on those issues should be excluded.

Because work on those issues was not particularized in the time entries, the ap-

propriate compensation could not be calculated simply by excluding specific hours. The defendants proposed a reduction of ten percent of the total time to account for the battery claim. Such a reduction would amply cover all work performed distinctly on the battery claim. The alleged battery was part of the claim of sexual harassment and thus, to that extent, constitutes a compensable issue. The distinct battery claim was a very small part of the trial, and thus a ten percent reduction for work on that claim is more than sufficient to exclude all work performed solely on the battery count. It follows, therefore, that the request by the plaintiff and her attorney for an eighteen percent reduction for that claim is patently unreasonable.

With respect to the issue of the plaintiff's employer, a percentage reduction is similarly warranted to eliminate noncompensable work that cannot be identified from the time entries. The plaintiff and her attorney again request an eighteen percent reduction for work on this issue. This request is also patently excessive.

Significantly, the burden of developing, and presenting, evidence on the employment issue fell on the plaintiff. Consequently, from the time of the pre-trial conference, most of the work done on this secondary issue was performed by the plaintiff. Therefore, it seems to me that an additional five percent reduction of the total fee would be more than enough to prevent the defendants from being compensated for work done in connection with the employment.[5]

---

4. Item 324 includes, among other things, a telephone call from attorney Vogt to Judge Scriven's office. What that had to do with this case is not explained, and thus the time spent on that task should be excluded. Since it is included with other tasks that took 3.1 hours to complete, that time will all be excluded except for one hour that Montgomery agrees should be compensated.

5. There is an occasional entry that may concern the employment issue (items 75, 103, 145, 148, 152, 154, 199, 247, 252, 255, 258, 261). Those items do not appear to adequately cover the time spent on that issue, and thus a percentage reduction will be used. In light of that reduction, the time entries will not also be excluded, since that would result in a

If the fifteen percent reduction based upon the battery and employment issues is off the mark, it is off the mark on the high side. It is appropriate, however, to place the risk of error upon the defendants on that matter since it was their failure to keep more detailed time records that prevented the precise exclusion of hours.

The lodestar calculation based upon the exclusion of the indicated hours, but without the fifteen percent reduction is as follows:

| Individual | Rate | Hours | Total |
|---|---|---|---|
| Attorney Hyman | $245 | 412.7 | $101,111.50 |
| Attorney Veit | $186 | 263.9 | 49,085.40 |
| Attorney Tennenberg | $133 | 5.8 | 771.40 |
| Attorney deCastro | $126 | 9.25 | 1,165.50 |
| Attorney Smith | $119 | 5.25 | 624.75 |
| Paralegal Horan | $ 74 | 6.8 | 503.20 |
| Attorney Turkel | $185 | 229.6 | 42,476.00 |
| Attorney Cohen | $165 | 118.5 | 19,552.50 |
| Attorney Thomas | $125 | 2.8 | 350.00 |
| Attorney Vogt | $100 | 127.2 | 12,720.00 |
| Paralegal Knipp | $ 75 | 99.1 | 7,432.50 |
| Paralegal Nielsen | $ 75 | .8 | 60.00 |
| | | | $235,852.75 |

Reducing this lodestar amount by fifteen percent yields total attorneys' fees of $200,474.84.

## II.

The only additional adjustment that has been advocated (either up or down) is a limitation based on the alleged financial inability of both the plaintiff and her lawyer to pay such large attorneys' fees and expenses. This factor warrants a substantial reduction in the fees and expenses awarded to the defendants.

■■■ The Eleventh Circuit has held "that a district court awarding attorney's fees to a prevailing Title VII defendant should consider ..., as a limiting factor, the plaintiff's financial resources." *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir.1982). In this respect, the "court should ascertain whether, in light of the plaintiff's ability to pay, a reduced assessment would fulfill the [statutory] deterrent purpose [of protecting employers from burdensome and baseless

double reduction in connection with the employment issue.

litigation] without subjecting the plaintiff to financial ruin." *Id.*

■■■ The plaintiff's ability to pay, however, is not a controlling factor. *Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 239 (5th Cir.1990). Thus, for example, an award of attorney's fees should not be denied altogether simply because the plaintiff is indigent. *Durrett v. Jenkins Brickyard, Inc.*, supra, 678 F.2d at 917. As this principle reflects, the precise limits imposed by an inability to pay are unclear. Nevertheless, for the purposes of resolving this case, it is enough to note that a fee award is permissible as long as it is not "clearly wholly beyond any present or prospective ability of the losing party to pay." *Alizadeh v. Safeway Stores, Inc.*, supra, 910 F.2d at 239.

A party seeking to limit an award of attorney's fees has the burden to establish his or her financial status. *Gibbs v. Clements Food Company*, 949 F.2d 344, 345 (10th Cir.1991); see *Chapman v. AI Transport*, 229 F.3d 1012, 1039 (11th Cir.

2000) (*en banc*). The plaintiff and her attorney each attempted to demonstrate limited financial resources by materials submitted to the court. Thereafter, the defendants were permitted to take their depositions. The information developed and presented shows that a substantial reduction in an award is warranted, but that the reduction should not virtually eliminate the award, as the plaintiff and her attorney contend.

The plaintiff and her attorney assert, essentially, that each has a modest annual income and a modest net worth (Doc. 198, pp. 3, 7–8). These assertions, however, are clearly open to question. Notably, the plaintiff and her attorney have previously been found lacking in credibility. Thus, the jury found at least some of the plaintiff's testimony, such as the battery allegation, to be false. Further, I have concluded that the plaintiff's attorney misrepresented facts of the case to me at the pre-trial conference (Doc. 168, pp. 31–32). This lack of candor provides a background against which the obscurities of the pair's depositions should be considered.

The plaintiff testified, for example, that she did not know how her commission at her current job was calculated (Doc. 201, Ex. A, p. 7). She said further that she does not know what compensation to expect for 2002 (*id.* at p. 10). She also stated that she did not know whether she was in any kind of money market fund or matching fund at work (*id.* at p. 51). In addition, the plaintiff, who resides in Brooklyn, provided no meaningful explanation why the address on her checks is listed as Clinton Corners, New York (*id.* at pp. 23–24). Further, the plaintiff failed to provide any justification for continued support of her twenty-three year old daughter, who is in her fourth year of college and has a job as a website designer and illustrator (*id.* at pp. 16–17).

Similarly, there are clearly questions about the claim by the plaintiff's attorney that he has limited disposable income. Thus, for example, it appears that, for each of the last three seasons, the attorney has spent about $3,000 for Tampa Bay Devil Rays tickets. On another occasion he gave $2,000 to his daughter's boyfriend to permit him to trade as a stockbroker (Doc. 203, p. 43). These types of expenditures belie the claim of a limited income. Moreover, as the defendants correctly state, the attorney "uses his law firm as a personal bank account" and "[t]hus, it is difficult to determine [the attorney's] exact income" (Doc. 199, p. 9).

Not only do the submissions by the plaintiff and her attorney fail to provide reliable information concerning their expendable income, but they seek to minimize substantial real property interests that each possesses. Thus, the plaintiff owns a three-eighth interest in a five-family apartment building in Brooklyn. She characterizes this as being in "a working-class neighborhood" (Doc. 197, p. 4), while the defendants' New York attorney says that the area "has become a desirable neighborhood to live in" (Doc. 199, p. 7). The plaintiff, who has the burden to establish her financial condition, did not have an appraisal done, but stated merely that in the early 1990's it was appraised at $134,000 (Doc. 201, p. 40). In light of the plaintiff's failure to show otherwise, I am going to assume that the building is worth much more than that now.

The attorney reports an interest in two pieces of real property: his residence and his office building. Lumping them together, he asserts that these are held as tenancies by the entireties and that it would be unfair to his wife to take these properties into consideration in assessing his ability to pay. While I am prepared to accept this contention with respect to the resi-

dence, no showing has been made which would justify disregarding the value of the office building simply because of the nature of the property ownership. Moreover, in light of the lack of a current appraisal of the building, I shall assume that the equity of approximately $84,000 asserted by the attorney is understated (Doc. 203, Ex. 3).

In sum, the financial information from the plaintiff and her attorney demonstrates that the imposition of an award of fees and expenses in an amount of over $200,000 could lead to the financial ruin of either. On the other hand, the pair's assertion that an award should be limited to $11,500 (Doc. 198, p. 13) is unsupported by their financial resources. Moreover, such an award, under the circumstances of this case, would not accomplish adequate deterrence of the statutory purpose of protecting employers from burdensome and baseless litigation.

Having considered the pair's financial resources, particularly the real property that each owns, it seems to me that an award of attorneys' fees of $60,000 against each separately is appropriate. Under this approach, the defendants can seek to recover up to $120,000 of the large amount that they were forced to expend in defending this frivolous lawsuit. The plaintiff and her attorney, on the other hand, will be limited to reimbursing the defendants in an amount that appears to be within each person's means.

Finally, on this point, the plaintiff's memorandum argues that only a small award should be made because, in essence, no award is justified (Doc. 198, pp. 9–11). Apparently, despite the lengthy initial Order (Doc. 168) and the succinct comments denying reconsideration (Doc. 185), the plaintiff and her lawyer still don't get it. Accordingly, I will say it again in blunt terms: Hoping for a big pay-off, the plaintiff and her lawyer filed a frivolous lawsuit, causing the defendants to spend enormous sums in defense. Then when the meritlessness of the case became evident during the trial and the defendants offered the plaintiff the opportunity to drop the case in return for a waiver of all fees and expenses, the plaintiff, through her lawyer, answered with a greedy demand for $175,000. Under these circumstances, the defendants are entitled to recover, if not all, at least a significant amount of the money that the plaintiff and her lawyer unfairly caused them to spend.

### III.

The defendants also seek $41,512.73 in costs and expenses under Rule 54(d)(1), Fed.R.Civ.P., 42 U.S.C.2000e–5(k) and 28 U.S.C.1927. The plaintiff and her counsel object to the bulk of these expenditures, asserting that, at most, the defendants are entitled to $12,110 (Doc. 186, Ex. 2).

The defendants' requested expenses are spread over four affidavits submitted by defendants' counsel, Kenneth Turkel and Martin Hyman (see Docs. 175, 177, 179, 183).[6] However, contrary to my previous Order (Doc. 168, p. 35), the defendants have failed satisfactorily to "separate and list those costs" sought pursuant to 28 U.S.C.1920. This failure is important because at this point only costs recoverable under Rule 54(d)(1), Fed.R.Civ.P., which are typically just those costs compensable under § 1920, will be awarded. Thus, litigation expenses that might otherwise have

---

**6.** In a submission prior to the court's order awarding the defendants attorneys' fees and costs (Doc. 168), the firm of Moskowitz, Mandell, Salim & Simowitz, former local counsel in this case, submitted an affidavit stating that it incurred costs and expenses totaling $3,505.06 (Doc. 154). However, because no documentation supporting these claimed expenses was ever submitted, they will not be allowed.

been recovered under either 42 U.S.C. 2000e–5(k) or 28 U.S.C 1927 will not be allowed because, in light of the financial resources of the plaintiff and her attorney, the maximum amounts that are appropriately assessed under those provisions have already been reached. Because this is not true of the costs recoverable under Rule 54(d)(1) and § 1920, *see infra,* p. 1339, the defendants should have taken greater care to identify, and justify, those costs. While it appears that all such allowable costs have been discerned, to the extent they have not, it is because the defendants did not follow the direction to separate and list costs recoverable under § 1920.

▆▆▆ Under Rule 54(d)(1), costs "shall be allowed as of course to the prevailing party...." Thus, there is a presumption in favor of awarding costs to the prevailing party. *Arcadian Fertilizer, L.P. v. MPW Indus. Services, Inc.,* 249 F.3d 1293, 1296 (11th Cir.2001); *Chapman v. AI Transport, supra,* 229 F.3d at 1038. Indeed, the Eleventh Circuit has held that costs under this rule should be denied only as a penalty to the prevailing party for some defection on its part during the litigation. *Chapman v. AI Transport, supra,* 229 F.3d at 1039. Moreover, a losing party's financial status need not be considered in determining the amount of the award, although in a rare case a court may do so. *Id.*

In this case, the defendants, who prevailed on all counts of the plaintiff's complaint, are clearly the prevailing parties and, therefore, are entitled to recover their costs. Furthermore, I have considered the plaintiff's financial status and, in light of the circumstances just reiterated, *supra,* p. 1338, decline to reduce the amount of the costs award on the basis of financial hardship.

On the other hand, the Supreme Court has emphasized that Rule 54(d) does not permit "unrestrained discretion to tax

costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case." *Farmer v. Arabian Am. Oil Co.,* 379 U.S. 227, 235, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964). Rather, costs awarded under this rule are limited to the list of items set forth in 28 U.S.C. § 1920 and related statutes. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).

▆▆▆ As indicated, the defendants have not adequately separated the costs recoverable under § 1920 and either § 2000e–5(k) or § 1927. Consequently, the majority of expenses for which they seek reimbursement are not compensable under § 1920. Specifically, facsimiles, long distance telephone calls, couriers, express mail, computerized legal research, attorney travel and lodging, postage, search services, office supplies, attorney meals, secretarial services, mediation and expert witness fees (*see* Docs. 175, 177, 179, 183) are not compensable under § 1920 because these expenses are not enumerated in the statute. *See Duckworth v. Whisenant, supra,* 97 F.3d at 1399 (postage, parking, computerized legal research and expert witness fees are not compensable under § 1920); *Desisto College, Inc. v. Town of Howey–in–the–Hills,* 718 F.Supp. 906, 914 (M.D.Fla.1981), *aff'd,* 914 F.2d 267 (11th Cir.1990) (express mail, facsimiles and long distance telephone calls are not compensable under § 1920); *Tang How v. Edward J. Gerrits, Inc.,* 756 F.Supp. 1540, 1545 (S.D.Fla.1991), *aff'd,* 961 F.2d 174 (11th Cir.1992) (attorney's travel expenses are not recoverable under § 1920); *Avirgan v. Hull,* 705 F.Supp. 1544, 1546 (S.D.Fla. 1989), *aff'd,* 932 F.2d 1572 (11th Cir.1991) (courier expenses are not a recoverable cost); *George v. GTE Directories Corp.,* 114 F.Supp.2d 1281, 1300 (M.D.Fla.2000) (mediation expenses not compensable un-

der § 1920); *Corsair Asset Management, Inc. v. Moskovitz,* 142 F.R.D. 347, 352 (N.D.Ga.1992) (secretarial overtime charges are properly considered part of overhead).[7]

After excluding these non-taxable costs, there remain for consideration expenses of photocopying, service of process, witness fees, and court reporter fees. These types of expenses, when adequately described and documented, are compensable under § 1920. *See* 28 U.S.C. § 1920(1)–(4).

The plaintiff objects to reimbursement for the bulk of these costs, primarily on the grounds that they were incurred before the pre-trial conference and/or they lack specificity (Doc. 186, Ex. 2). The plaintiff's objection to reimbursement of costs incurred prior to the pre-trial conference lacks merit because, under Rule 54(d)(1), the losing party is responsible for such costs from the inception of the case.

On the other hand, the plaintiff's contention that the descriptions of several expenses lack specificity is well-taken (*id.*). In this connection, the plaintiff argues that several of the costs are so vague that she cannot discern whether they are compensable under § 1920 (*id.*).

■■■■ The plaintiff, in particular, has objected to reimbursement of approximately $4,300 in photocopying expenses for lack of specificity. Under § 1920(4), photocopying "necessarily obtained for use in the case" is compensable. In making this determination, "the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." *United States Equal Employment Opportunity Commission v. W & O. Inc.,* 213 F.3d 600, 623 (11th Cir.2000). The burden of establishing entitlement to photocopying ex-

penses lies with the prevailing party. *See Desisto College, Inc. v. Town of Howey-in-the-Hills, supra,* 718 F.Supp. at 910, n. 1.

■■■■ In this case, the defendants' substantiation and description of their photocopying expenses consists of each firm's billing records which merely state "copies" or "photocopies" (*see* Docs. 175, 177, 179, 183). Conspicuously missing from these billing records is any description of the nature or purpose of the photocopying. *See e.g., Fulton Fed. Savings & Loan Assoc. of Atlanta v. American Ins. Co.,* 143 F.R.D. 292, 300 (N.D.Ga.1991) (explaining that the party seeking to recover photocopy costs must come forward with "evidence showing the nature of the documents copied and ... how they were used"). Although an accounting for each photocopy is implausible, the defendants have made no attempt to differentiate recoverable copying costs from nonrecoverable general photocopying expenses. *See Duckworth v. Whisenant, supra,* 97 F.3d at 1399 (a prevailing party may not recover for general photocopying).

The defendants argue in their reply memorandum that the photocopying expenses included duplication of motion papers, exhibits, transcripts, and jury instructions and request the court to award them "a reasonable percentage" of their photocopying costs to compensate them for these photocopies (Doc. 188, p. 7). However, assuming that these copies are compensable, I have no basis upon which to conclude, and the defendants do not suggest, what percentage of the approximately $4,300 sought for photocopying would reasonably account for these photocopies. Therefore, since the defendants have not described the photocopying costs suffi-

---

7. Notably, in the defendants' reply memorandum they state that they no longer seek compensation under § 1920 for expenses related to computer research, phone calls, faxes, travel, secretarial overtime and meals (Doc. 188, p. 7).

ciently to permit a determination of which photocopies were necessarily obtained for use in this case, reimbursement for photocopying costs is rejected in its entirety. *See Desisto College, Inc. v. Town of Howey–In–The–Hills, supra,* 718 F.Supp. at 914 (denying reimbursement for photocopying because the defendants failed to differentiate between copies necessarily obtained for use of the case and those for convenience).

There are also several other expenses that the plaintiff correctly identifies as lacking specificity (Doc. 186, Ex. 2). Thus, due to the lack of a sufficient description and justification, reimbursement is rejected for "The Presentation Group" invoices, service of a subpoena to an unidentified individual, court reporter fees for unidentified services and expenses titled "miscellaneous disbursements" (*see* Doc. 175, Ex. A; Doc. 177, Ex. C).

On the other hand, the $150 expense for the pre-trial conference transcript (Doc. 177, Ex. C, p. 1) will be reimbursed because it is a recoverable cost to which no objection has been made (Doc. 186, Ex. 2). Furthermore, the defendants are entitled to reimbursement for the deposition transcripts of Bernadette Scelta, Stan Epperson, Karen Harding and Marie Vitale–Rullo (Doc. 179, pp. 2–3; p. 4, ¶ 6), which totaled $5,996.40. *See United States Equal Employment Opportunity Commission v. W & O, Inc., supra,* 213 F.3d at 620 (taxation of deposition costs is authorized by § 1920(2)). Moreover, the defendants will be awarded $45 for a witness fee and $70.37 for deposition services (Doc. 179, pp. 2–3), because the plaintiff did not make a meritorious objection to these expenses (*see* Doc. 186, Ex. 2).

Consequently, the defendants are entitled to recover costs under Rule 54(d)(1) and § 1920 in the amount of $6,261.77.

It is, therefore, upon consideration

ORDERED:

That, pursuant to 42 U.S.C.2000e–50(k), the defendants Delicatessen Support Services, Inc., and Boar's Head Provisions Co., Inc., shall recover from the plaintiff Bernadette Scelta $60,000 in attorneys' fees. Further, these defendants, pursuant to 28 U.S.C.1927, shall separately recover from plaintiff's counsel, David P. Montgomery, $60,000 in attorneys' fees. The total award to these defendants is $120,000. In addition, all defendants, pursuant to Rule 54(d)(1), F.R.Civ.P., and 28 U.S.C.1920, shall recover from the plaintiff Bernadette Scelta costs of $6,261.77.