**Philip BARASH, as preliminary executor of the Estate of Celia Kates, Plaintiff,**

v.

**Gloria KATES, a/k/a Gloria Haberman, Defendant.**

**Case No. 04–80159–Civ.**

United States District Court, S.D. Florida.

Oct. 23, 2008.

---

13. The evidence shows that Celia was discharged from the hospital on November 10, 2000. (DE 50, Plaintiff's exh. 36).

Plaintiff pro se.

Roy Edmund Fitzgerald, III, Esq., Page Mrachek Fitzgerald & Rose, West Palm Beach, FL, for Defendant Gloria Kates.

***ORDER IMPOSING SANCTIONS UPON PHILIP BARASH, DENYING REMAINING MOTIONS AS MOOT, AND CLOSING CASE (DEs 112, 114, 118, 120, 127, 134)***

JAMES M. HOPKINS, United States Magistrate Judge.

**THIS CAUSE** comes before the Court *sua sponte.*

On October 12, 2006, 585 F.Supp.2d 1347, 2006 WL 6117556, this Court ordered that Plaintiff, Philip Barash be sanctioned pursuant to the court's inherent authority in an amount to be determined at a later date. (DE 89). The matter was stayed after Barash filed a petition for bankruptcy in another district. (DE 99).. On

March 19, 2008, 2008 WL 762863, this Court lifted the stay, and ordered the parties to file submissions in support of the amount to be sanctioned. (DE 109). The matter is now ripe for review. For the reasons that follow, this Court **ORDERS** that Barash be sanctioned in the form of attorney's fees, in the total amount sought by Defendant Gloria Kates, one hundred twelve thousand, seven hundred thirty-nine dollars ($112,739.00).

## BACKGROUND

In its previous Order, this Court ordered that Philip Barash ("Barash") be sanctioned pursuant to the inherent authority of the Court for advancing a claim which Barash knew was unsupported, and for using perjured testimony in this action to harass Defendant Gloria Kates ("Kates") and her family, and to deprive her of the proceeds of a trust account for his own personal benefit. (DE 89, pgs. 32–36).

## DISCUSSION

■ In her original Motion for Sanctions, Kates moved the Court for sanctions in the form of attorneys's fees and costs, claiming that she incurred more than four hundred thousand dollars ($400,000.00) in such fees and costs in the various actions brought by Barash and/or his wife. (DE 69, pg. 11; DE 106, pg. 2). In her most recent declaration, Kates states that she now only seeks an award of attorney's fees, and does not seek to tax costs. (DE 111, n.1). The total amount sought by Kates is one hundred twelve thousand, seven hundred thirty-nine dollars ($112,739.00). (DE 111, pg. 12). In support of her request, Kates has submitted (1) a copy of a property assessment of Barash's

residence [1] for the year 2004–2005, which indicates that the home's appraised value was one million, three hundred two thousand dollars ($1,302,000.00); and (2) extensive billing records to document time spent by counsel and paralegals. (DE 70, pgs. 217–218; DE 111, exh. 2).

In response, Barash has submitted several pleadings wherein he argues that (1) his residence is owned solely owned by his wife, Sandra Barash ("Sandra"); (2) in his bankruptcy case, the Trustee filed a certification that Barash had no assets; (3) although on November 13, 2003 he signed an agreement to purchase a house in Broward County, he only did so to secure a mortgage for his son, his wife Sandra provided the down payment, and his son was intended to be the true owner of the house; (4) after Barash's son was forced to resell the Broward residence he repaid his mother for the down payment; (5) Barash personally has no assets to satisfy any judgment; and, (6) Kates' claims that Barash has assets have not been supported by evidence. (DE 110, pgs. 1–2; DE 133, pgs. 2–5; DE 135; DE 137; DE 138).

After Barash repeatedly accused Kates' counsel of lying and misrepresenting Barash's assets, (DE 134, 137, 138, 140),[2] Kates replied with the following arguments: (1) Barash has failed to support his claim that the Muttontown property is owned solely by his wife; (2) a public records search undertaken in good faith and performed on the Nassau County Tax Assessor's database in Westlaw shows that Barash is listed as an owner of the Muttontown property; (3) Barash's protestations of the public record should not be trusted because he is being sanctioned for relying on perjured testimony in these

---

1. The address of the residence is 6 Serenite Lane, Muttontown, N.Y. 11791. (DE 137, pg. 1).

2. On June 25, 2008, 586 F.Supp.2d 1323, 2008 WL 4922787, this Court granted Kates'

Motion to Enjoin Frivolous Filings by Barash. (DE 143).

proceedings; (4) the fact that Barash owned real property in his own name in Broward County, Florida, in 2003 and 2004 rebuts Barash's claim that he has no assets; (5) Barash has failed to account for $80,600.00 in proceeds from the sale of the Broward county property in 2004; (6) the proceeds of the sale of the Broward County property could be used to satisfy any sanction award entered herein; and, (7) Barash's claim that he has no assets is rebutted by the fact that he was able to secure the voluntary dismissal of his bankruptcy petition by agreeing to pay (a) five thousand dollars ($5,000.00) to Ford Motor Co., one of his creditors, in satisfaction of a sanctions award entered by the Bankruptcy Court; and, (b) ten thousand, eight hundred two dollars and twenty-five cents ($10,802.25) to the Trustee's lawyers. (DE 127, pgs. 1–5, and exhs. D, H, I, J; DE 136, pgs. 1–12).

After considering the arguments of the parties, this Court agrees with Kates that Barash has sufficient assets to be able to pay some amount of sanction. Given the fact that this Court has already determined that Barash used perjured testimony in the trial of this matter in an attempt to harass Kates and her family, and for his own personal financial gain, Barash's protestations are unavailing. Barash's protestations are all the more unconvincing when considering the fact (1) a public records database lists Barash as an owner of his approximate 1.3 million dollar home; (2) Barash bought and sold a home in Broward County in 2004 for an eighty thousand dollar ($80,000.00) profit; and, (3) Barash was able to secure dismissal of his bankruptcy petition by paying over fifteen thousand dollars ($15,000.00). (DE 70, pg. 2171 DE 127, pgs. 1–5, and exhs. D, H, I, J; DE 136, pgs. 1–12). This Court therefore turns its attention to the amount of sanction that should be imposed.

### Barash should be Sanctioned for the Full Amount of Kates' Attorney's Fees

■ It is well established that courts may award attorney's fees and costs as a sanction pursuant to the court's inherent authority for bad faith litigation. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 51–53, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), *reh'g denied,* 501 U.S. 1269, 112 S.Ct. 12, 115 L.Ed.2d 1097 (1991) (discussing the court's inherent power to assess attorney's fees as sanction for bad faith conduct before the court); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765–766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (noting that sanctions imposed pursuant to the court's inherent authority include, *inter alia,* an assessment of attorney's fees as part of the fine to be levied) (*citation omitted*); *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 259, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (discussing the court's ability to assess attorney's fees as part of its inherent authority when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons); *F.D. Rich Co. Inc. v. United States ex rel. Indus. Lumber Co., Inc.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974) ("We have long recognized that attorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons"); *Byrne v. Nezhat,* 261 F.3d 1075, 1106 (11th Cir.2001) ("One aspect of a court's inherent power is the ability to assess attorneys' fees and costs against the client or his attorney, or both, when either has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' ")

The assessment of attorney's fees for bad faith litigation serves two goals: (1) "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court;" and, (2) "mak[ing] the prevailing party whole for expenses

caused by his opponent's obstinacy." *Chambers*, 501 U.S. at 45–46, 111 S.Ct. 2123. *See also Allapattah Srvcs., Inc. v. Exxon Corp.*, 372 F.Supp.2d 1344, 1373 (S.D.Fla.2005) ("Invocation of the inherent power serves the dual purposes of 'vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.' ") (*quoting Chambers*, 501 U.S. at 46, 111 S.Ct. 2123).

"Because the court's inherent power is so potent, it should be exercised 'with restraint and discretion.' " *Byrne*, 261 F.3d at 1106 (*quoting Chambers*, 501 U.S. at 50, 111 S.Ct. 2123). "A court should be cautious in exerting its inherent power and 'must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.' " *Byrne*, 261 F.3d at 1106 (*quoting Chambers*, 501 U.S. at 50, 111 S.Ct. 2123). *See also Crowe v. Smith*, 151 F.3d 217, 226 (5th Cir.1998) (noting that inherent powers must be exercised with restraint and discretion).

As noted by our High Court in *Chambers*, "the underlying rationale of 'fee shifting' is, of course, punitive." 501 U.S. at 53, 111 S.Ct. 2123 (*quoting Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *citing Pavelic & LeFlore v. Marvel Entm't. Group*, 493 U.S. 120, 126, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989)). *See also Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765–766 (10th Cir.1997) (noting that fees assessed pursuant to the inherent authority of the court are punitive in nature and are designed to punish the abuse of the judicial process rather than the original wrong) (*citing Shimman v. Int'l Union of Operating Eng'rs*, 744 F.2d 1226, 1232 n. 9 (6th Cir.1984) (*en banc*), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985); *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1502–

03 (5th Cir.1995) (*en banc*), *cert. denied*, 516 U.S. 1046, 116 S.Ct. 706, 133 L.Ed.2d 662 (1996)).

■ In determining the amount of sanction to impose, a court must fashion a sanction that not only punishes the wrongdoer, but also serves as a deterrent. *See Belak v. Am. Eagle, Inc.*, No. 99–3524–CIV, 2001 WL 253608, *5 (S.D.Fla. March 12, 2001) (*citing Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)) (*other citation omitted*). However, the court must also consider the resources of the party being sanctioned. *See Baker v. Alderman*, 158 F.3d 516, 528 (11th Cir.1998) (*citation omitted*); *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1336–1337 (11th Cir. 2002) (reversing award of sanctions imposed under the court's inherent authority because although the court considered the *combined* finances of the parties, the court failed to consider whether each party had the ability to pay the full amount of the sanction) (*citations omitted*). A party may document his ability to pay through the submission of affidavits. *See Baker*, 158 F.3d at 529; *Martin*, 307 F.3d at 1337.

■ Courts are permitted to sanction a party for his or her opponent's entire amount of attorney's fees. *See In re Graffy*, 233 B.R. 894, 899 (M.D.Fla.1999) ("In the presence of bad faith, a court may award to the injured party the entire amount of its reasonable attorney's fees as an appropriate monetary sanction.") (*citing Chambers*, 501 U.S. at 55, 111 S.Ct. 2123).

In *Chambers*, the United States Supreme Court held that the District Court acted within its discretion, pursuant to its inherent authority, when it assessed as a sanction for Chamber's bad faith conduct the entire amount of NASCO's attorney's fees. *See Chambers*, 501 U.S. at 56–57,

111 S.Ct. 2123.[3] Such sanction was imposed after the District Court found that Chambers, not his counsel, was "the strategist" behind a scheme designed to (1) deprive the court of jurisdiction; and, (2) "devise a plan of obstruction, delay, harassment, and expense sufficient to reduce NASCO to a condition of exhausted compliance." *Chambers*, 501 U.S. at 41, 111 S.Ct. 2123. In affirming the sanctions order, the United States Supreme Court emphasized that Chamber's "entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court ..." 501 U.S. at 51, 111 S.Ct. 2123. The Court further observed,

> ... As NASCO points out, however, the District Court concluded that full attorney's fees were warranted due to the frequency and severity of Chambers' abuses of the judicial system and the resulting need to ensure that such abuses were not repeated ... Indeed, the court found Chambers' actions were "part of [a] sordid scheme of deliberate misuse of the judicial process" designed "to defeat NASCO's claim by harassment, repeated and endless delay, mountainous expense and waste of financial resources." ... It was within the court's discretion to vindicate itself and compensate NASCO by requiring Chambers to pay for all attorney's fees. *Cf. Toledo Scale [Co. v. Computing Scale Co.]*, 261 U.S. [399], at 428, 43 S.Ct. [458], at 466 [67 L.Ed. 719 (1923) ].

*Chambers*, 501 U.S. at 56–57, 111 S.Ct. 2123 (*footnotes and internal citation omitted* ).

See also *Scott v. Metropolitan Health Corp.*, No. 1:02–CV–485, 2005 WL 3434830, *7 (W.D.Mich. Dec. 13, 2005) (assessing as sanction, pursuant to inherent authority,

opponent's entire amount of attorney's fees incurred in defending two bad faith claims, for a total amount of $1,608,268.80); *In re Graffy*, 233 B.R. at 898–899 (assessing sanctions pursuant to inherent authority in the entire amount incurred by IRS in bankruptcy case; court noted that petitioner attempted to mislead the court during the course of three bankruptcies which spanned several years, by repeatedly and intentionally falsifying bankruptcy filings, substantially undervaluing personal property and income, and failing to inform the court that he loaned or transferred substantial amounts of money during one of his three bankruptcies); *United States v. Spitzer*, No. 6:06–cv–479–Orl–22JGG, 2007 WL 2155577, *2–*3 (M.D.Fla. July 25, 2007) (assessing attorney's fees as sanction, pursuant to inherent authority of court, in the total amount of attorney's fees incurred by United States, as well as double the amount of costs); *Van Deelen v. City of Kansas City, Missouri*, No. 04–989–CV–W–GAF, 2006 WL 2077640, *1–*17 (W.D.Mo. July 24, 2006) (assessing attorney's fees as sanction in amount of $6,000.00, pursuant to inherent authority of the court, for bad faith litigation, after the plaintiff (1) fabricated evidence for sole the purpose of harassing the city and its employees and in an attempt to create a genuine issue for trial; (2) wasted the time of city employees by calling them to testify at trial and then adduced irrelevant and cumulative testimony; (3) argued with the court during trial; and, (4) impeded the expeditious resolution of claims; court further enjoined future pro se litigation against the city and its employees).

■ Application of the foregoing leads this Court to conclude that Barash should be sanctioned for the full amount of attor-

---

3. The total amount of attorney's fees incurred by NASCO was nine hundred ninety-six thousand, six hundred forty-four dollars and sixty-

five cents ($966,644.65). See *Chambers*, 501 U.S. at 40, 111 S.Ct. 2123.

ney's fees incurred by Kates in defending this action. Standing alone, perjury is both a "serious offense that results in incalculable harm to the functioning and integrity of the legal system as well as to private individuals," and an "assault on the cornerstone of our judicial system." *Belak,* 2001 WL 253608, *6 (*quoting United States v. Holland,* 22 F.3d 1040, 1047 (11th Cir.1994); *Tasby v. United States,* 504 F.2d 332, 336 (8th Cir.1974)).

However, Barash's actions went beyond well beyond perjury. In the previous Order imposing sanctions, and in its Order Granting Defendant's Motion to Enjoin Frivolous Filings by Barash, this Court discussed at length the activities undertaken by Barash both in these proceedings, and prior thereto. (DEs 89, 143).[4] Similar to *Chambers, In re Graffy,* and *Van Deelen,* Barash attempted to mislead the court by fabricating evidence, and committed perjury in trial in an attempt to create a factual issue where none existed. There can be no question that Barash undertook such actions for the sole purpose of continuing his personal vendetta against Kates and her family for his personal financial gain. Given Barash's litigation history which has been detailed in the previous Order enjoining Barash from future filings without court approval, (DE 143, pgs. 5–9), there can be no doubt that Barash's actions herein were nothing more than yet another attempt to deliberately misuse and abuse the judicial system to further his own biased agenda. As in *Chambers,* 501 U.S. at 51, 111 S.Ct. 2123, Barash's "entire course of conduct throughout the lawsuit" evidences "bad faith and an attempt to perpetrate a fraud on the court."

To make matters worse, even after Barash was ordered to be sanctioned, Barash's attacks became more all the more vicious and were then levied against Kates' counsel, as evidenced by the fact that Barash used practically every pleading filed subsequent to the Order Imposing Sanctions to call Kates and her counsel liars and to accuse them of producing fraudulent documents to the Court. (DEs 112, 118, 133, 134, 137, 138, 140, 142). In light of such behavior, this Court concludes that sanctions in the amount of Kates' entire attorney's fees serve the dual purposes of vindicating judicial authority and making Kates, the prevailing party, whole for the expenses caused by Barash's obstinacy. *See Chambers,* 501 U.S. at 45–46, 111 S.Ct. 2123; *Allapattah Srvcs., Inc.,* 372 F.Supp.2d at 1373. Considering Barash's litigious history and access to substantial funds, anything less than the entire amount sought by Kates would have little to no deterrent effect. *See Belak,* 2001 WL 253608 at *5.

### The Hourly Rates and Number of Hours Expended are Both Reasonable

This Court must next consider the reasonableness of the claimed hourly rates and claimed number of hours. *See Spitzer,* 2007 WL 2155577 at *3 n. 5 (examining the reasonableness of the claimed hourly rates and number of hours in assessing attorney's fees as sanction pursuant to inherent authority of court) (*citing Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1303 (1988)).

In support of her request for sanctions in the amount of all attorney's fees incurred, Kates has submitted a declaration of Roy E. Fitzgerald, III, ("Fitzgerald"), accompanied by billing records detailing amounts billed to Kates in this matter. (DE 111, exh. 2). Such submissions show that counsel billed at the following hourly

---

4. Rather than engage in a lengthy rehashing of all the facts and this Court's observations related thereto, this Court herein adopts and incorporates by reference such previous opinions. (DE 89, 143).

rates: (1) Fitzgerald: $256.25 pre-trial, $310.00 during trial, and $320.62 post-trial; (2) L. Louis Mrachek ("Mrachek"): $438.85 pre-trial, and $440.00 during trial; (3) Julie Sellers Ferguson ("Sellers"): $176.94 pre-trial, $180.00 during trial, and $183.81 post-trial, and (4) James Murray ("Murray") (paralegal): $108.55 pre-trial, and $110.00 during trial. (DE 111, pgs. 7–11).[5]

Insofar as the background of counsel is concerned, Fitzgerald's declaration shows the following: (1) Fitzgerald has been practicing since 1988, is admitted to practice in the states of New York and Florida, and is certified by the Florida Bar in Business Litigation, and is A/V rated by Martindale Hubbell; (2) Mrachek has been practicing since 1974, is admitted in the States of Florida and Virginia, is certified in Business Litigation and Civil Trial Law by the Florida Bar, is certified in Civil Trial Advocacy by the National Board of Trial Advocacy, and is certified in Business Bankruptcy by the American Bankruptcy Board of Bankruptcy Certification; (3) Sellers has been practicing since 2000, and was employed by the firm of Page, Mrachek, Fitzgerald & Rose, P.A. from 2001 to 2007; (4) Murray has been a legal assistant for over 8 years. (DE 111, pg. 6, exhs. 4, 5, 6). Fitzgerald opines that the hourly rates charged are within the prevailing market rates for the Southern District of Florida. (DE 111, pg. 12).

Fitzgerald's declaration also shows that counsel reasonably expended the following number of hours in the matter: (1) Fitzgerald: 8.8 hours pre-trial, .40 hours during trial, and 31.6 hours post-trial, for a total of 40.8 hours; (2) Mrachek: 19.10 hours pre-trial, and 24.4 hours during trial, for a total of 43.5 hours; (3) Sellers: 241.4 hours pre-trial, 52.0 hours during trial, and 125.0 hours post-trial, for a total of 418.40 hours; and, (4) Murray: 46.30 hours pre-trial, and 9.4 hours during trial, for a total of 55.70 hours. (DE 111, pgs. 9–10, exhs. 7, 8, 9).

Despite two invitations by this Court, Barash has lodged no specific objection to either the claimed hourly rates or the total number of hours. (DEs 122, 129). As this Court has warned Barash, in the attorney's fees context, failing to object is generally deemed fatal. (DEs 122, 129). See *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999) (stating that fee opponents are required to be specific and "reasonably precise" with respect to any objections they may have); *Norman*, 836 F.2d at 1301 (stating, "[a]s the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents."); *Scelta v. Delicatessen Support Srvcs., Inc.*, 203 F.Supp.2d 1328, 1333 (M.D.Fla.2002) (stating, "[a] fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is generally viewed as fatal.") (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir.1997)).

---

**5.** Although Barash has not objected to Kates' request for paralegal fees, it is well settled that where the work performed is that normally performed by an attorney, paralegal time may be included as part of an attorney's fee award. See *Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (holding that the district court did not err, as part of awarding attorney's fees pursuant to 42 U.S.C. § 1988, by compensating the plaintiffs for the work of law clerks and paralegals at market rates, rather than at their cost to the attorney); *Jean v. Nelson*, 863 F.2d 759, 778–780 (11th Cir.1988) (holding that time spent by paralegals and law clerks could be reimbursed under the Equal Access to Justice Act to the extent that the work was normally done by an attorney) (citing *Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. Unit B 1982)).

After having reviewed such submissions, and based upon this Court's expertise, this Court determines that the claimed hourly rates and total hours expended are both reasonable.

### Barash's Ability to Pay the Sanction

As previously noted, this Court must consider Barash's ability to pay any sanction imposed. *See Baker*, 158 F.3d at 528; *Martin*, 307 F.3d 1332 at 1336–1337. A party may document his ability to pay through the submission of affidavits. *See Baker*, 158 F.3d at 529; *Martin*, 307 F.3d at 1337.

In support of his claim that he personally has no assets to satisfy any judgment, Barash argues that (1) his residence was purchased by and is owned solely owned by his wife, Sandra; (2) in his bankruptcy case, the Trustee filed a certification that Barash had no assets; (3) although he signed agreement to purchase a home in Broward County in 2003, he only did so to obtain a mortgage for his son, and Sandra provided the down payment; (4) after Barash's son was forced to resell the Broward residence, he repaid his mother for the down payment; and, (5) Kates' claims that Barash has assets have not been supported by evidence. (DE 110, pgs. 1–2; DE 133, pgs. 2–5; DEs 135, 137, 138).

However, Kates points out that (1) the public records show that Barash is listed as an owner of his residence in Muttontown; (2) the fact that Barash owned real property in his own name in Broward County, Florida, in 2003 and 2004 rebuts Barash's claim that he has no assets; (3) Barash has failed to account for the $80,600.00 in proceeds realized from the sale of the Broward county property in 2004; and, (4) Barash was able to secure the voluntary dismissal of his bankruptcy petition by agreeing to pay a total of over fifteen thousand dollars ($15,000.00) to one of his creditors and the Trustee's lawyers.

(DE 127, pgs. 1–5, and exhs. D, H, I, J; DE 136, pgs. 1–12).

In light of Barash's propensity for fabricating evidence, and in light of the arguments raised by Kates, this Court finds that Barash's claim that he lacks sufficient assets to pay any judgment utterly lacking in credibility. Moreover, this Court finds that Barash is able to pay sanctions in the total amount claimed by Kates. Such conclusion is based on the following: (1) the Barash residence was valued at one million, three thousand two dollars ($1,302,000.00) for the year 2004–2005; (2) the public records show that Barash is an owner of the residence, (2) Barash and his wife, Sandra, lent their son seventy-five thousand dollars ($75,000.00) to purchase a Broward county residence in 2004, and when the home was sold, their son repaid them $80,600.00, and, (3) Barash paid over fifteen thousand dollars ($15,000.00) to secure a dismissal of his bankruptcy petition at the end of 2007.

### CONCLUSION

In conclusion, **IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1.) Barash is hereby **ORDERED** to pay, as sanctions, the total amount of attorney's fees claimed by Kates, **one hundred twelve thousand, seven hundred thirty-nine dollars ($112,739.00)**. Barash is **ORDERED** to pay such amount no later than **SIXTY (60) DAYS** from the date of this Order.

2.) All other motions are **DENIED AS MOOT.** (DEs 112, 114, 118, 120, 127, 134).

3.) The Clerk of Court is **ORDERED** to close this case.