986 F.2d 1384
 Helen MARTIN-TRIGONA, Dr., Elizabeth I. Martin, Anthony R.
Martin, IV, Plaintiffs-Appellants,
v.
Leander SHAW, Parker McDonald, Ben Overton, Gerald Kogan,
Rosemary Barkett, Stephen Grimes, Major Harding,
Paul Marko, Sherry Anderson, et al.,
Defendants-Appellees.
 No. 91-5867
Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 March 26, 1993.
 
 Helen Martin-Trigona, Palm Beach, FL, for plaintiffs-appellants.
 Charles M. Fahlbusch, Hollywood, FL, for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before KRAVITCH, BIRCH and CARNES, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this case, Dr. Helen Martin-Trigona filed a 42 U.S.C. § 1983 lawsuit in the United States District Court for the Southern District of Florida in her name and in the name of her two minor grandchildren, Anthony R. Martin, IV, and Elizabeth Martin, against nineteen officials of the State of Florida, including a state circuit court judge, seven Justices of the Florida Supreme Court, various attorneys and caseworkers of the Florida Department of Health and Rehabilitative Services, and others. Her complaint sought $10,000,000.00 in money damages, an injunction suspending federal funding of state programs in Florida, and other relief.
 
 
 2
 After filing a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim, defendants amended their motion requesting dismissal to allege that Dr. Martin-Trigona's action in filing the complaint violated a permanent injunction issued by the United States District Court for Connecticut in In re Martin-Trigona, 592 F.Supp. 1566 (1984), aff'd, 763 F.2d 140 (2d Cir.1985), cert. denied, 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986). Acting pursuant to its authority under Federal Rule of Civil Procedure 41(b), the district court granted the motion to dismiss on that basis. Dr. Martin-Trigona appeals from the dismissal.
 
 
 3
 Appellant's son, Anthony Martin-Trigona, is a notoriously vexatious and vindictive litigator who has long abused the American legal system. A brief summary of his career in the courts up through 1983 can be found in In re Martin-Trigona, 573 F.Supp. 1245 (D.Conn.1983), aff'd in part and remanded in part, 737 F.2d 1254 (2d Cir.1984), on remand, 592 F.Supp. 1566 (D.Conn.1984), aff'd, 763 F.2d 140 (1985), cert. denied, 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986). Nine years ago Anthony Martin-Trigona had already filed at least 250 civil suits throughout the United States, with the actual number far exceeding that conservative count. 573 F.Supp. at 1268-69; 737 F.2d at 1259 n. 4. Anthony Martin-Trigona and his mother, the appellant in this case, have filed more than two dozen appeals in the Eleventh Circuit alone since 1983. The Clerk also reports that a search of some, but not all, of the files of the United States District Court for the Southern District of Florida reveals that in just the past five years the Martin-Trigonas have filed, or attempted to file, at least thirteen lawsuits in that district court alone. We have no way of knowing how many lawsuits they have filed in other district courts, other circuit courts, and state courts around the country since the tabulation in the Connecticut injunction case eight years ago.
 
 
 4
 As amazing as the volume of Anthony Martin-Trigona's litigiousness has been, where he has truly distinguished himself has been in "the style of litigation he has adopted and by the cunning and malignant sophistication he has brought to his avocation." 573 F.Supp. at 1247. Throughout his remarkably varied nationwide practice as a pro se litigator, Martin-Trigona has displayed an "ugly strand of personal animus and unjustifiable vituperation," id. at 1248, and he has used litigation as a cruel and effective weapon against his enemies, who are more often imagined than real. Id. at 1248-51 ("his choice of targets is not rational; rather, he is apt to fasten on anyone who has suffered the slightest contact with him.").
 
 
 5
 Anthony Martin-Trigona has sued literally hundreds, if not thousands, of attorneys, judges, their spouses, court officials, and other human beings. In summarizing the district court's findings, which it was careful to point out considerably understated his activities as a litigant, the Second Circuit said that:
 
 
 6
 Martin-Trigona is known to have filed over 250 civil actions, appeals, and other matters throughout the United States, which have been pursued with "persistence, viciousness, and general disregard for decency and logic." He has used legal pleadings to ventilate his contempt and hatred of persons of Jewish heritage and to level accusations which "have often been personal, have often emphasized racial or religious affiliations, and have often involved the members of ... judges' and counsel's families." The purpose, nature and effect of his resort to multiple litigation has been to involve as many persons in as many confounding legal processes as possible.
 
 
 7
 737 F.2d at 1259 (footnote omitted). That was eight years ago. Even a cursory search with Westlaw and Lexis reveals that his litigiousness has continued unabated since that time. Volumes could be written about Anthony Martin-Trigona's vexatious lawsuits, but any such treatise would have to contain annual pocket parts to provide any hope of keeping current. His mother's complaint in this case describes two recent lawsuits Martin-Trigona has filed that appear to fit his decades-long pattern, and, as we subsequently conclude, this very lawsuit is but another example of the endless stream of litigation filed by him or on his behalf by his mother.
 
 
 8
 In an attempt to defend the judicial system from abuse, the United States District Court in Connecticut and the Second Circuit Court of Appeals fashioned an injunction designed to minimize to the extent constitutionally permissible the damage Anthony Martin-Trigona and anyone acting in concert with him can do to our judicial system and to innocent parties. In re Martin-Trigona, 573 F.Supp. 1245 (D.Conn.1983), aff'd in part and vacated in part, 737 F.2d 1254 (2d Cir.1984), on remand, 592 F.Supp. 1566 (D.Conn.1984), aff'd, 763 F.2d 140 (1985). This Court, sitting en banc, has cited the Second Circuit's decision in the Martin-Trigona case for authority that "[f]ederal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." Procup v. Strickland, 792 F.2d 1069 (11th Cir.1986) (en banc). Although the Martin-Trigona injunction was not before this Court in Procup, various courts around the country have enforced it. E.g., Anthony Martin-Trigona v. Public Broadcasting Service, 840 F.2d 11 (4th Cir.1988) (text in Westlaw) (affirmed dismissal for non-compliance with the injunction); Helen Martin-Trigona v. Gellis & Melinger, 830 F.2d 367 (D.C.Cir.1987) (affirmed dismissal of complaint for Dr. Martin-Trigona's failure to respond to show cause order regarding compliance with the injunction); Anthony Martin-Trigona v. United States, 779 F.2d 72 (D.C.Cir.1985) (affirmed denial of leave to file complaints pursuant to the injunction); In re Anthony Martin-Trigona, No. 87-0175, 1991 WL 158790 (Bankr.S.D.Fla. Aug. 1, 1991) (apparently holding Anthony Martin-Trigona in contempt in part for violation of the injunction, and admonishing him to obey the injunction); Anthony Martin-Trigona v. Gary Hart, 1987 WL 12004 (D.D.C. May 28, 1987) (leave to file action denied pursuant to the injunction).
 
 
 9
 As finally entered, and as it relates to this case, the Connecticut injunction permanently enjoined Anthony Martin-Trigona from filing or attempting to initiate any new lawsuit in any federal court in the United States, with exceptions not applicable here, without first obtaining leave of that federal court. In re Martin-Trigona, 592 F.Supp. 1566 (D.Conn.1984). Martin-Trigona was further enjoined, if he sought such leave, to file with the complaint or other pleading specified documents disclosing to the court some relevant parts of his litigation history both in general and as it relates to the specific defendants and claims involved in the intended lawsuit. Id. at 1571-72. There is no need to detail those requirements here, because it is undisputed that there was not even an attempt at compliance with those requirements before the lawsuit in this case was filed.
 
 
 10
 Realizing the resourcefulness of Anthony Martin-Trigona and the fact that he has had the active assistance of a number of allies in his assault upon the judicial system, the United States District Court in Connecticut expressly stated in its order that the injunction covered not only Anthony Martin-Trigona but also applied "equally to persons or entities acting at his behest, at his direction or instigation, or in concert with him." 592 F.Supp. at 1574. The court ordered a copy of its injunction served on Dr. Martin-Trigona, the named plaintiff and appellant in the present case, and, lest she miss the point, it expressly found from an extensive record that she had "collaborated closely" with her son in many of his lawsuits. Id. at 1576. The injunction clearly applies with full force to Dr. Martin-Trigona when she acts at her son's behest, or at his direction, or at his instruction, or in concert with him. It has been enforced against her before. Helen Martin-Trigona v. Gellis & Melinger, 830 F.2d 367 (D.C.Cir.1987) (affirming dismissal of complaint because of Dr. Martin-Trigona's failure to respond to show cause order regarding compliance with the injunction).
 
 
 11
 Dr. Martin-Trigona does not challenge the validity of the injunction, as it relates to filing new federal court litigation, nor could she. The only restriction this Circuit has placed upon injunctions designed to protect against abusive and vexatious litigation is that a litigant cannot be "completely foreclosed from any access to the court." Procup v. Strickland, 792 F.2d at 1074 (emphasis in original). This Court has upheld pre-filing screening restrictions on litigious plaintiffs. Copeland v. Green, 949 F.2d 390 (11th Cir.1991); Cofield v. Alabama Public Serv. Comm., 936 F.2d 512, 517-18 (11th Cir.1991). This Court has also stressed that, "[c]onsiderable discretion necessarily is reposed in the district court" when it drafts such orders. Procup v. Strickland, 792 F.2d at 1074. We certainly owe deference to such an order of a district court which has been upheld by another circuit court of appeals. The injunction entered by the Connecticut district court and upheld by the Second Circuit is a reasonable response to the abusive litigation of Anthony Martin-Trigona and his allies, including his mother, and it will be enforced in this circuit as it has been in others. Dismissal of a complaint with prejudice is an appropriate means to enforce violations of such injunctions.
 
 
 12
 Dr. Martin-Trigona's only contention is that she was not acting in concert with or at the instigation of her son when she filed this lawsuit, and that the district court erred by not giving her an evidentiary hearing so she could prove that there was no connivance between the two of them. The district court dismissed the complaint and denied Dr. Martin-Trigona an evidentiary hearing to prove that she was not acting at the behest of or in concert with her son, because the district court felt it was indisputable from the documents before it that Dr. Martin-Trigona was acting in collaboration with her son when she filed the complaint in this case. As the district court found:
 
 
 13
 It must be noted that Anthony Martin-Trigona has filed a Petition nearly identical to this case at Case No. 91-6508-CIV-ZLOCH. That Petition has been dismissed. The similarity of the pleadings and theories in that Petition with those in this case confirm that the Plaintiffs herein have collaborated with, and have been instigated by the known vexatious litigant, Anthony Martin-Trigona.
 
 
 14
 While there are some differences, the two complaints both stemmed from the same nucleus of operative fact--a family law dispute and the removal of Anthony Martin-Trigona's children from his custody. Both complaints described the removal of those children in essentially the same way. Anthony Martin-Trigona's complaint characterized the removal of his children as "the children being taken hostage." The complaint filed by his mother, Dr. Martin-Trigona, described the removal of her son's children as "a judicial kidnapping" in which "the children are being held as political hostages."
 
 
 15
 Both complaints alleged that the children were seized from Anthony Martin-Trigona in retaliation for his having filed a civil rights action against seven justices of the Florida Supreme Court and others. Those seven justices were also among the defendants named in both of these complaints. Both complaints alleged wrongdoing by the same state trial court judge who entered orders in connection with the child custody dispute. Both complaints also alleged that the children have been mistreated since they were removed from Anthony Martin-Trigona's custody.
 
 
 16
 It strains credulity to suggest, as Dr. Martin-Trigona does, that when she filed the complaint in this case she was not acting at the behest of her son or in connivance with him. Even if she were not, she was acting in concert with him as that term is used in the Connecticut injunction. The injunction applies to Dr. Martin-Trigona when she acts in concert with her son regardless of whether there is any express agreement or even communication between the two. Even if, as she claims, her son asked her not to file this lawsuit, the fact remains that she filed it for him in every meaningful sense of the word. Her lawsuit sought relief for wrongs perceived to have been done to the son. It concerned his battle with a state governmental agency and state court system over his children.
 
 
 17
 The lawsuit Dr. Martin-Trigona filed in this case sought, among other things, to suspend federal funding for all state programs in Florida because a department of state government and a state court system had allegedly wronged Anthony Martin-Trigona. Dr. Martin-Trigona's obvious purpose was to punish the defendants for taking her son's children away from him and to bring pressure upon the defendants to reach a disposition of the dispute over the children that is agreeable to her son. In filing this lawsuit, Dr. Martin-Trigona acted in concert with her son for purposes of the injunction. She failed to comply with the injunction, and the district court was within its authority in dismissing her lawsuit.[1]
 
 
 18
 AFFIRMED.
 
 KRAVITCH, Circuit Judge, concurred:
 
 19
 I concur in the result only.
 
 
 
 [1]
 Dr. Martin-Trigona's attempt to file notice of appeal for her two minor grandchildren was ineffective. Knoblach v. Commissioner of Internal Revenue, 749 F.2d 200, 201 n. 1 (5th Cir.1984), cert. denied, 474 U.S. 830, 106 S.Ct. 95, 88 L.Ed.2d 78 (1985); Theriault v. Silber, 579 F.2d 302, 302 n. 1 (5th Cir.1978)