*Dennis WILLIAMS*
Petitioner

*vs.*

*The Window Rock District Court*[1]
Respondent

*and*

*Ben Wauneka Sr.*
Respondent and Real Party in Interest

In the Supreme Court of the Navajo Nation

No. SC-CV-37-98

September 21, 2001

---

[1] We amended the caption to show that any writ of prohibition or superintending control would run to the Window Rock District Court, and Ben Wauneka Sr. is properly named as the real party in interest.

Dennis Williams, Fort Defiance, Navajo Nation (Arizona), Petitioner *pro se.*

Before AUSTIN, Acting Chief Justice, and KING-BEN and GILMORE, Associate Justices.

Opinion delivered by AUSTIN, Chief Justice.

This case comes before us on a petition for a writ of prohibition, superintending control, and the consolidation of certain land dispute cases. For the purposes of our jurisdiction, it is sufficient to note that on May 8, 1998 the Window Rock District Court, sitting in small claims, found the Petitioner, Dennis Williams, to be in "civil contempt of court" arising out of a long-standing land dispute which prompts this case, where he was given a suspended "fine" of $350 for the contempt and placed in jeopardy of incarceration. We also assume jurisdiction because the petition alleges a fraud upon the Court, and this Court has the inherent power to hear and determine such a claim so that public confidence in its decisions will not be undermined.

The appeal file is voluminous. The Petitioner offered many exhibits, and his accusation of a fraud upon the Court, or one committed by someone with the Court, required the retrieval and review of nearly twenty-years of records of separate civil actions of both this Court and the Window Rock District Court. We are sensitive to any claim of fraud, and that required a time-consuming review of the full record of this land dispute. Having reviewed that record, we will establish the standard for reviewing claims of fraud upon a court, discuss the appropriateness of a petition for writ of prohibition to address claims of fraud upon a court, and apply those standards to the record before us.

I

Fraud upon the court is a serious matter, because it places the integrity of a given court into question. It raises the specters of bias, favoritism, corruption, and a lack of basic judicial ethics. While judgments presumed to be regular, they can be attacked for a lack of jurisdiction. *In the Interest of Two Minor Children*, 4 Nav. R. 57, 61 (Nav. Ct. App. 1983). There are two ways of moving a court to vacate a judgment. First, there are motions pursuant to Rule 60(c) of the Navajo Rules of Civil Procedure, including motions to vacate a void judgment. *In re Adoption of J.L.B.*, 6 Nav. R. 314, 315 (Nav. Sup. Ct. 1990). Second courts have the inherent authority to reopen cases or "take another look at a judgment" where justice and equity require them to do so, because of the principle that courts are to be just and must do justice. *Navajo Eng'g and Constr. Auth. v. Noble*, 5 Nav. R. 1, 2 (Nav. Ct. App. 1984). The federal courts have a similar procedure, where a litigant attack a judgment in an "independent action" by alleging that a judgment should not be enforced in equity and good conscience, or where there was fraud, among other things *United States v. Beggerly*, 524 U.S. 38 (1998). That remedy is available only where there has been a "grave miscarriage of justice." *Id.* at 47.

One situation where there is a "grave miscarriage of justice" is where there

is fraud upon the court. That is what this petition essentially claims. This is the first instance in which such a claim has been brought before this Court. Fraud on the court requires a 'scheme by which the integrity of the judicial process has been fraudulently subverted by a deliberately planned scheme in a manner involving 'far more than an injury to a single litigant. *Addington v. Farmer's Elevator Mutual Ins. Co.*, 650 F.2d 663, 668 (5th Cir. 1981) ; *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245-46 (1944). This is another definition:

> Fraud upon the court ... should embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct. 7 Moore's Federal Practice Par. 60.33 (1979)

Another element of fraud upon the court is putting false documents before the court, the kind of conduct alleged here. *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238. The standard for proving fraud on the court is high: "Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud on the court." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir 1978), quoting *United States v. International Telephone & Telegraph Corp.*, 349 F. Supp. 22, 29 (D. Conn. 1972).

## II

While we approve of an independent action to prevent a grave miscarriage of justice, including fraud upon the court, the use of a petition for a writ of prohibition is proper. Writs of prohibition are used to prevent a trial court from unlawfully acting within its jurisdiction. *Pino v. Bedonie*, 7 Nav. R 15, 15 (Nav. Sup. Ct. 1992). In this particular case, a party obtained a small claims judgment against the Petitioner based upon an original judgment, and the court found the Petitioner in civil contempt of court for failure to pay the prior small claims judgment. The court levied a fine and threatened the Petitioner with incarceration.[2] We find it proper to contest the small claims judgment and the underlying judgment using a petition for writ of prohibition, but we limit such a procedure to the usual circumstance where the jurisdiction of the court and the validity of the judgment are being challenged.

---

2  We note that fines are not proper in civil contempt cases, because civil contempt is used to enforce judgments and it is not a punishment for past conduct which authorizes a fine as a penalty. Incarceration may not be used to enforce a civil money judgment using civil contempt procedure.

## III

We now turn to the petition, and we confine ourselves to the original petition and a supplementary submission we requested of the parties. We will not address the other claims the parties have put before the Court in the many documents they have filed. As we understand the petition and the subsequent submission pursuant to this Court's order, the fraud upon the court alleged here consists of this: The Navajo Nation Court of Appeals lacked jurisdiction over appeal No. A-CV-46-81, and to "avoid summary dismissal" and to cover up that lack of jurisdiction, someone or someone working for the Court of Appeals switched the case number from A-CV-46-81 to A-CV- 26-81. The irregularities alleged in support of this case number switching theory include the absence in the record of a pretrial order referenced in the decision of the Court of Appeals, and the lack of either a notice of appeal or a motion for reconsideration to the trial court. The Petitioner also attacks factual errors in the Court of Appeals' judgment, a matter we cannot address here because it does not fall within the fraud upon the court standard stated above. As to those matters, the Petitioner had ample opportunity to raise them previously, and the record shows that in fact he did so.

Based upon Petitioner's claims, which question the validity of prior judgments, we will now undertake a review of this land dispute. The Petitioner is advised that the Court gathered records from the former Court of Appeals, the Window Rock District Court, and this Court to do this review.

The legal record of this particular phase of dispute begins with a complaint filed against Ben Wauneka Sr. by Dennis Williams (the Petitioner here) on August 1981. No. WR-CV-490-81. On September 23, 1981, the Window Rock District Court determined that Williams had exclusive rights to 7.6 acres of a disputed 10.8 acre area Williams calls the "Boh Toh Canyon" land, and Charles Wauneka had exclusive rights to 3.2 acres.[3] *Id.*, Judgment at 3 file of the subsequent appeal in Cause No. A-CV-46-81 in the Navajo Nation Court of Appeals shows that a permanent injunction was issued from the Window Rock District Court on September 23, 1981. The file contains the notice appeal that was used to appeal the September 23, 1981 judgment. The notice of appeal was filed by Attorney Kee Yazzie Mann on behalf of "Ben Wauneka, and Charlie C. Wauneka," on October 23, 1981. Mr. Mann also requested a trial *de novo* in his notice of appeal. The appeal was timely under 7 N.T.C. § 801 (1978), because it was filed on the thirtieth (30th) day following the date of the judgment on the last day to file for the Court of Appeals to have jurisdiction. Mr. Mann also filed a "motion for correction of errors for a new trial, and for recusal" with Window Rock District Court, which was the equivalent of a motion for reconsideration. It is dated October 2, 1981 November 12, 1981, Attorney Leonard Watchman, the

3  The inventory attached to the probate petition of Charley Nez Wauneka Sr.'s estate identifies the land as the "Creek Canyon Farmland (10.8 acre plot)." He was Charles "Charley" Wauneka Jr.'s father, and the land went to the father when an alleged sale of it to the Petitioner was not proven.

Petitioner's counsel, filed a response and motion to deny appeal. The issue of appellate jurisdiction was not raised in that motion or in subsequent filings on the Petitioner's behalf. Obviously, all persons associated with this case knew the appeal was timely filed.

From there, the record of the Court of Appeals is thick with filings, responses and other documents. On August 3, 1983, the Acting Chief Justice entered an order finding probable cause to hear the appeal, and he made orders for the preparation of a pretrial order. The record shows that the order was issued by the Clerk of the Court of Appeals "upon the telephonic instruction of the Acting Chief Justice." The Chief Justice at the time was the Honorable Nelson J. McCabe. He was the permanent head of the Court of Appeals, and trial judges were appointed to sit with him to hear appeals. It appears that Chief Justice McCabe removed himself from the case, and Judge Robert Walters was appointed as the Acting Chief Justice to sit with Judge Marie F. Neswood and Judge Harry Brown. Judge Walters was the presiding judge in the Tuba City District Court, and apparently due to the distance between Window Rock and Tuba City, he directed the issuance of the order by telephone. Such was proper then (and is proper now), because the order was procedural and not a final order.

On September 19, 1983, Attorney Lawrence A. Ruzow filed a stipulated order in accordance with the Acting Chief Justice's order. Attorney Leonard Watchman, acting on the Petitioner's (Williams) behalf, filed a response to Ben Wauneka Sr.'s answer and counterclaim on September 16, 1983. On October 5, 1983, the Clerk of the Court of Appeals received proposed findings of fact, conclusions of law and a judgment submitted by Mr. Ruzow. That document has the correct docket number A-CV-46-81. The Court of Appeals filed its final judgment on July 24, 1984 and it is this judgment that has the incorrect docket number (A-CV- 26-81) The Petitioner uses that error to argue his case number switching theory. The final judgment is obviously written with a typewriter. The writer must have hit the "2" key rather than the "4" key, and that resulted in a typographical error.

Despite that error, the record does not support Petitioner's claim that the docket number was "switched" to cover up a lack of jurisdiction. The Court of Appeals clearly had jurisdiction, because the notice of appeal timely filed. In addition, at no time did the Petitioner challenge jurisdiction before the Court of Appeals on the ground that the appeal was not timely filed.

The Petitioner made a motion for rehearing following the Court of Appeals' trial *de novo* and oral decision from the bench, raising his claims again. On July 24, 1984, Court of Appeals entered a ten page order denying the motion for rehearing. This order has the correct docket number of A-CV-46-81.

On the issue of a pretrial conference on the appeal the order denying the motion for rehearing recites that at the time of a scheduled pretrial conference, "the Acting Chief Justice reviewed carefully the pre-trial order submitted to

comment and negotiate the terms of the trial order." He ordered "counsel for Wauneka," to prepare a final pretrial order, and have it approved by counsel the Petitioner. The final pretrial order was signed by both counsels and submitted to the Court without amendment on September 19, 1983.

The Court of Appeals held a trial *de novo* on September 1983, and at the conclusion, the Court found that neither Ben Wauneka Sr. nor Dennis Williams had met their burden of proof that they had an interest in the land, so it vacated the Window Rock District Court's September 23, judgment. The Court of Appeals found that at the time of his death, Charley Nez Wauneka Sr. had exclusive rights to the land in dispute.[4]

To illuminate the practice of the time, the statutory rule procedure for appeals was as follows: Appellants were required to file a motion for reconsideration of a judgment prior to taking an appeal. That was done. The appeal had to be filed within thirty days of the trial court's judgment, and that was done. After a case was filed, the Chief Justice made a determination of whether there was "probable cause" for an appeal, and appeals were heard "*de novo.*" That means the old practice (in the absence of trial transcripts) of the appellate court hearing the case anew before a panel of three judges. Specifically, despite the Window Rock District Court's September 23, 1981 judgment, the case was heard all over again by the Court of Appeals, under the existing law at that time. The usual procedure was for the Court of Appeals to hear the case, and the judge would then give instructions for someone to write the decision. While Mr. Ruzow may have prepared a draft judgment at the instruction of the Court, it is likely that the solicitor, the Court's attorney, wrote the order denying a rehearing. We base that assumption on the difference in type and writing styles of the judgment and the order denying a rehearing.

The most important part of the Petitioner's challenge is the allegation that the Court of Appeals did not have jurisdiction over the appeal of the September 23, 1981 judgment. The record does not support that claim. The record consists of a motion for reconsideration made to the district court and a notice of appeal with a date stamp on it. The correct filing date is reflected on the docket sheet which shows the appeal was timely.

In sum, the record does not support the Petitioner's claim. The docket number switching conspiracy theory might be plausible if indeed the notice of appeal was filed late or if no motion for reconsideration was filed. The one defect that does appear is an incorrect docket number on the Court of Appeals' final decision, but it is obviously a typographical error. Moreover, the error had

4  Ben Wauneka Sr. received the land when the estate of Charley Nez Wauneka Sr. was distributed. The Petitioner belatedly questioned the paternity of Ben Wauneka Sr., but that issue is definitely foreclosed under the principle of *res judicata*. Charley Nez Wauneka Sr.'s other children did not challenge paternity when the heirs were determined, and we note that the Petitioner was not Charley Nez Wauneka Sr.'s child.

no effect on either the jurisdiction of the Court of Appeals or its decision on the merits. Despite the discrepancy between the docket numbers, the names of the parties are correctly listed in the caption of the final decision. We now order that typographical error corrected.

While that appeal was pending, Charley Nez Wauneka Sr.'s probate was before the Window Rock District Court Based upon the Court of Appeals' decision that the Petitioner had no interest in the land, the administrator of the estate appealed the district court's denial of his claim against the Petitioner for unauthorized use of the land. *Matter of the Estate of Wauneka Sr.*, 5 Nav. R 79 (Nav. Sup. Ct. 1986). This Court reversed the district court's judgment (in an appeal on the record, because the Judicial Code was amended in 1985 to provide for them) and there was a slip of the pen in citing the prior Court of Appeals judgment because of the typographical error in it. *See Id.* at 79, 81, 82. There was another appeal, which was decided on May 31, 1988, and another motion for reconsideration, which was denied. *Matter of the Estate of Wauneka, Sr. v. Williams*, 6 Nav. R. 63 (Nav. Sup. Ct. 1988). We will not elaborate further on the other proceedings before this Court in the interest of time.

In sum, the Petitioner has had many opportunities to assert the claims he attempts to bring before us yet again. We cannot leave this case, however, without commenting upon some problems we find in the entire record that concerns the Petitioner's conduct. The same issues have been litigated again, again, and again. It is time for this "land dispute" to stop. The Petitioner had his day in court many times, and the record shows the many documents filed on the Petitioner's behalf and the hearings he had.

We also note that while the Petitioner filed his papers *pro se*, he is obviously using law-trained individuals to write his papers. Their style varies, from the poorly-written and bombastic initial petition to the well-written and diplomatic submission. We ignored the essay on contemporary Indian affairs and Navajo Nation politics as mere surplusage. As for ghost-written pleadings by individuals who are not members of our bar, we caution that the practice is a contempt of court and a crime.

In addition, we could assess penalties upon the Petitioner for filing a frivolous petition and wasting the Court's time and limited resources, but we decline to do so with this warning further abuses of the litigation process will not be tolerated. We are aware of the difficulties courts have balancing free speech and process access rights against litigation abuses litigants, but there will come a point, which is within the Petitioner' s control, where there will be serious consequences for misconduct. *See, Martin-Trigona v. Shaw*, 986 F.2d 1384 (11th Cir. 1993); *Busby v. Doe*, 231 B.R. (M.D. Fla. 1998) and *Vasile v. Dean Witter Reynolds, Inc.*, 20 F.Supp.2d 465 (E.D.N.Y.) (prior review of complaints before filing suits and the authority to end assaults on the judicial process), and compare with *Procup v. Strickland*, 792 F.2d 1069 (11th Cir. 1986) (a plaintiff cannot be completely foreclosed from any access to court). We also caution that our review of ways

challenge judgments is *not* an invitation to Petitioner to try his claims anew.

The concluding point is that the "Boko Toh Canyon" land does not belong to the Petitioner, and he has no rights to it. Accordingly, the petition for writ of prohibition or other appropriate writ is denied.