Philip **BARASH**, as preliminary executor of the Estate of Celia Kates, Plaintiff,

v.

Gloria **KATES**, a/k/a Gloria Haberman, Defendant.

Case No. 04–80159–Civ.

United States District Court, S.D. Florida.

June 25, 2008.

---

Plaintiff pro se.

Roy Edmund Fitzgerald III, Esq., of Page Mrachek Fitzgerald & Rose of West Palm Beach, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO ENJOIN FRIVOLOUS FILINGS BY PLAINTIFF, PHILIP BARASH (DE 141)

JAMES M. HOPKINS, United States Magistrate Judge.

**THIS CAUSE** comes before the Court upon receipt of Defendant's Motion to Enjoin Frivolous Filings by Plaintiff, Philip Barash. (DE 141). After review of such motion, and having been advised on the premises, this Court **GRANTS** Defendant's Motion. (DE 141).

### BACKGROUND

After the parties consented to trial by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), this Court conducted a two day non-jury trial in March of 2005, in West Palm Beach, Florida. (DEs 37, 42, 48, 49). Plaintiff, Philip Barash ("Barash"), as the preliminary executor for the estate of Celia Kates ("Celia") sought recovery of the proceeds of a joint brokerage account from Defendant, Gloria Kates ("Kates"), on the basic theory that the account constituted a gift in contemplation of death (or *donatio causa mortis*) made to Kates by the Celia but revoked prior to Celia's death. (DEs 13, 30).

At the conclusion of the trial, this Court found in favor of Defendant Kates. (DE 58). This Court also ordered Barash's counsel to show cause why sanctions should not be imposed after this Court observed that (1) Barash committed perjury in previous litigation he brought in the United States District Court for the Eastern District of New York, wherein he had sought to recover the funds at issue in the instant case; and, (2) Barash may have also been purposefully deceptive in his testimony before this Court in an attempt to gain control over the account at issue. (DE 60). Subsequently, Defendant Kates moved the Court to impose sanctions upon both Barash and his counsel for their continued misstatements of fact and taking of positions which were inconsistent with prior judicial findings and their own testimony. (DEs 68, 69, 70, 79). Kates sought sanctions in the form of attorneys's fees and costs, and noted that Kates incurred more than four hundred thousand dollars ($400,000.00) in attorney's fees and costs in various actions brought by Barash and/or his wife, and more than eighty-three thousand dollars ($83,000.00) in attorney's fees and costs in defending this action. (DE 69, pg. 11).

After conducting an evidentiary hearing, on October 12, 2006, 585 F.Supp.2d 1347,

2006 WL 6117556, this Court determined that although Barash's counsel should not be sanctioned, Barash should be sanctioned pursuant to the Court's inherent authority in amount to be determined at a later date. (DEs 88, 89). Counsel for Barash withdrew from representation prior to the issuance of such order, and Barash has proceeded *pro se* since such time. (DEs 62, 91, 90, 93).

In March of 2007, this Court entered a stay of proceedings after Barash filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of New York. (DE 99). The stay was lifted on March 19, 2008, and this Court is now attempting to determine the amount of sanctions to be imposed. (DE 109).

### DISCUSSION

In her motion, Kates moves the Court for the entry of an injunction enjoining Barash from making future filings without prior Court approval. In the alternative, Kates asks that the Court excuse Kates from having to respond to any of Barash's filings unless ordered by the Court. (DE 141, pgs. 1–6) (*citations omitted*).

█ The 11th Circuit has long recognized the court's ability to protect itself from abusive litigants. *See Procup v. Strickland*, 792 F.2d 1069, 1071–1074 (11th Cir.1986) (*en banc*) (affirming in part order of district court enjoining pro se litigant from filing any cases unless represented by counsel). *See also United States v. Hintz*, 229 Fed.Appx. 860, 861 (11th Cir.2007) (*citing Procup*, 792 F.2d at 1073–1074). The Court has also stated that district courts have the authority to impose "serious restrictions" on a litigant's ability to bring matters to court without an attorney. *See Procup*, 792 F.2d at 1070. "Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out

Article III functions." *Martin–Trigona v. Shaw*, 986 F.2d 1384, 1386–1387 (11th Cir. 1993) (*quoting Procup*, 792 F.2d 1069). As a result, "considerable discretion is necessarily reposed in the district court" to draft orders enjoining abusive litigation tactics. *See Martin–Trigona*, 986 F.2d at 1387 (*citing Procup*, 792 F.2d at 1074). *See also May v. Hatter*, No. 00–4115–Civ–Moore, 2001 WL 579782, *4 (S.D.Fla. May 15, 2001) (*quoting Martin–Trigona*, 986 F.2d at 1387) (*citing Procup*, 792 F.2d at 1074). Such orders may be appropriate to protect both the courts and its staff, as well as the rights of all litigants in the federal system. *See Procup*, 792 F.2d at 1071–1072 (noting that the claims of all other litigants suffer when a single litigant files "upwards of a lawsuit a day," and that every lawsuit filed, no matter how frivolous or repetitious, requires the investment of court time, whether the pleadings are reviewed by a law clerk, staff attorney, magistrate, or judge).

Courts can be creative in fashioning appropriate injunctions against abusive litigation tactics. *See Procup*, 792 F.2d at 1072–1073. *See also Hintz*, 229 Fed.Appx. at 861 (*citing Procup*, 792 F.2d at 1073–1074). For example, courts have entered orders which (1) enjoin "prisoner litigants from relitigating specific claims or claims arising from the same set of factual circumstances;" (2) require "litigants to accompany all future pleadings with affidavits certifying that the claims being raised are novel, subject to contempt for false swearing;" and, (3) direct "the litigant to seek leave of court before filing pleadings in any new or pending lawsuit." *Procup*, 792 F.2d at 1072–1073 (*citations omitted; other examples of court orders omitted*). *See also Hintz*, 229 Fed.Appx. at 861 (noting that the court has approved order limiting further pleadings without order of the court, after the complaint has been filed); *Martin–Trigona*, 986 F.2d at 1387

(noting that the Eleventh Circuit "has upheld pre-filing screening restrictions on litigious plaintiffs.") (*citing Copeland v. Green,* 949 F.2d 390 (11th Cir.1991); *Cofield v. Alabama Public Serv. Comm.,* 936 F.2d 512, 517–18 (11th Cir.1991)).

 Moreover, courts may enjoin not only the abusive litigant, but also those working in concert with them, or at the behest of the litigant. *See Martin–Trigona,* 986 F.2d at 1387–1389 (affirming order of district court which applied equally to Martin–Trigona and "persons or entities acting at his behest, at his direction or instigation, or in concert with him.") The only limitation on the court's discretion to enjoin abusive litigation is that courts are not permitted to completely bar all access to the courts. *See Procup,* 792 F.2d at 1074. Should an injunction be entered, abusive litigants may be sanctioned for violating the injunction. *See Martin–Trigona,* 986 F.2d at 1389 (affirming order dismissing lawsuit filed by the mother of Martin–Trigona, because the mother acted in concert with her son to violate previous court order); *May,* 2001 WL 579782 at *5 (dismissing lawsuit with prejudice after abusive litigant violated injunction three times) (*citing World Thrust Films, Inc. v. Int'l Family Enter., Inc.,* 41 F.3d 1454, 1456 (11th Cir.1995)).

 In its previous order imposing sanctions upon Barash, this Court has already found that Barash used the instant case to continue his long history of attacks upon Defendant and her family. (DE 89, pgs. 8–16). Either Barash or his wife Sandra ("Sandra") have been litigating against Kates and her family over money since the year 2001, in both state and federal courts in Florida, Colorado, and New York. Specifically, this Court recalls that:

(1) In March of 2001, Gloria retained the firm of Page, Mrachek, Fitzgerald & Rose, P.A. to represent her and her two sons, Paul and Eric Siler ("Paul" and "Eric"). (DE 70).

(2) On April 30, 2001, in case number CA–01–4172–AI, Barash and his wife, Sandra, filed an action against Gloria and her son Paul in the Fifteenth Judicial Circuit in and for Palm Beach County, asserting causes of action for defamation and breach of fiduciary duty with respect to alleged improper administration of the Irving Kates Trust. (DE 66, pg. 2; DE 70, pg. 2, exh. A). The defamation claim related to a letter that Gloria and Paul had sent to Solomon Smith Barney on March 12, 2001, wherein Gloria stated that she believed her signature had been forged on a document which would have allowed Sandra to transfer funds from the Celia Kates and Irving Kates trusts into Sandra's own account. (DE 70, pg. 2). In the counterclaim filed by Gloria and Paul in the action, Gloria alleged that she did not sign the letter that Sandra submitted to Solomon Smith Barney, and that she did not consent to the transfer of the funds from the trust accounts to the personal account of Sandra. (DE 70, pg. 2, exh. A). In addition, Gloria alleged that Sandra and Philip had repeatedly attempted to remove her as trustee from the trusts so that they could have total control and transfer the funds into their own accounts. (DE 70, pg. 2, exh. A). On March 19, 2001, after receiving unauthorized requests to transfer from Sandra, and after being notified that Gloria did not consent to the transfer of funds out of the Celia Kates Trust account, Solomon Smith Barney froze the accounts. (DE 70, pg. 3). On September 26, 2001, the action was settled, along with another lawsuit, case number CP–01–2330–IB. (DE 66, pg. 2; DE 70, exh. B).

(3) In case number CP–01–2330–IB, which was also filed on April 30, 2001,

Celia sought to remove both Gloria and Sandra as trustees of the Irving Kates Trust. (DE 66, pg. 2; DE 70, pgs. 3–4). The litigation began after Gloria refused a request by Sandra and Barash to approve disbursements in the amount of one hundred and fifty seven thousand dollars ($157, 000.00) from the Irving Kates Trust to renovate Celia's Palm Beach oceanfront condominium and for the purchase of a Cadillac. (DE 70, pg. 4). The matter finally settled with the appointment of corporate trustee to replace Celia, Sandra, and Gloria as trustees, and the creation of three subtrusts, one each for Celia, Sandra, and Gloria. (DE 66, pg. 2; DE 70, pg. 4, exh. B). A provision of the settlement provided that certain funds could not be used from the Celia Kates Trust, directly or indirectly, for the purposes of Sandra and Barash unless Gloria received an equivalent amount during that year. (DE 70, pg. 4, exh. B).

(4) In October of 2001, in case number CV01–6990, Sandra, acting under a power of attorney for Celia, filed an action against Gloria in the United States District Court for the Eastern District of New York, again complaining about Gloria's alleged refusal to provide for Celia out of the Irving Kates Trust. (DE 66, pg. 2; DE 70, pg. 9). In that action, Sandra and Barash submitted affidavits,[1] wherein they swore to the existence of an oral contract between Gloria, Sandra and Celia concerning the joint accounts and the Irving Kates Trust (a theory inconsistent with the *gift causa mortis* theory four years later developed in this case). (DE 70, pg. 9). The New York action was dismissed by the court before Gloria was served with the complaint because the court ruled that San-

dra could not represent Celia under a power of attorney. (DE 66, pgs. 2–3; DE 70, pg. 9).

(5) In November of 2001, in case number CV 01–7828, Barash filed an action in the United States District Court for the Eastern District of New York against two of Gloria's sons, Paul and Eric, in an attempt to recover on a promissory note executed in 1975 in favor of their grandfather, Irving Kates. (DE 66, pg. 3; DE 70, pg. 9, exh. J). After the court granted a motion for summary judgment filed on behalf of Eric and Paul, Barash appealed to the United States Court of Appeals for the Second Circuit. (DE 70, pg. 9). The Second Circuit, in case number 02–9161, remanded the matter for the district court to consider whether the "probate exception" to federal diversity jurisdiction or equitable tolling principles applied to the case. (DE 70, pg. 9). On remand, the court dismissed the action, finding that although the "probate exception" did apply, equitable tolling did not toll the claims. (DE 66, pg. 4; DE 70, pg. 9, exh. K). Once again, Barash appealed the order of the District Court to the Second Circuit. (DE 66, pg. 4; DE 70, pg. 9). In case number 04–2430–CV, the Second Circuit affirmed the order of the District Court. (DE 66, pg. 4; DE 70, pg. 9).

(6) On an unspecified date in the year 2005, in case number 05–010624, on behalf of Celia's estate, Barash filed another action in the New York State Supreme Court against Paul and Eric in an attempt to recover on the promissory note executed in 1975. (DE 66, pg. 4; DE 70, pg. 10). At the time that Barash and defense counsel submitted their affidavits in response to the Court's Order

---

[1]. On cross examination at the bench trial herein, Barash admitted that he knew that the affidavits were false at the time they were filed in the New York action. (DE 52, pgs. 175–176, 178).

to Show Cause, the court had yet to rule on a motion to dismiss filed by Paul and Eric. (DE 66, pg. 4; DE 70, pg. 10).

(7) In January of 2003, Barash filed an action against Todd Siler ("Todd"), a third son of Gloria's. (DE 66, pg. 6; DE 70, pg. 10). In case number 03–00616AD, filed in the Fifteenth Judicial Circuit in and for Palm Beach County, Barash sought to recover on a 1998 promissory note allegedly signed by Todd in favor of his grandmother, Celia, in the amount of forty thousand dollars ($40,000.00). (DE 66, pg. 6; DE 70, pg. 10). The court dismissed the matter for lack of jurisdiction over Todd, who was a resident of Colorado. (DE 66, pg. 6; DE 70, pg. 10).

(8) Thereafter, on an unspecified date in the year 2003, in case number 03CV2356, Barash filed the same cause of action against Todd in Colorado state court. (DE 66, pg. 6; DE 70, pg. 10). After the action was commenced, Todd filed an affidavit in response, wherein he stated that he had neither signed, nor seen, the note at issue. (DE 66, pg. 6; DE 70, pg. 10). Barash hired a forensic examiner who ultimately concluded that the signature on the note did not belong to Todd. (DE 66, pg. 6; DE 70, pg. 10). Barash thereafter dismissed the action against Todd. (DE 66, pg. 6; DE 70, pg. 10). However, Barash filed an action to recover on the same note against Eric, which will be discussed momentarily. (DE 66, pg. 6; DE 70, pg. 10).

(9) On July 7, 2003, in case number 03 CP 3317, Sandra filed a petition in probate court seeking to invalidate the Last Will and Testament of Irving Kates, despite the fact that Irving Kates' estate had been probated in Palm Beach County in 1983 with no contests to the will. (DE 66, pg. 5; DE 70, pg. 5). After the corporate trustee of the Irving Kates trust filed a counterclaim, Gloria filed a motion to intervene, which was granted.

(DE 70, pg. 5). After Sandra dismissed her claim, the case proceeded on Gloria's counterclaim. (DE 70, pg. 5). Following an evidentiary hearing, the probate court issued an order describing how Barash and Sandra used funds from the Celia Kates Trust for their own benefit. (DE 70, pg. 5, exh. D). First, the probate court noted that Sandra issued checks totaling more than one hundred and eighty-seven thousand dollars ($187,000.00) for improvements to the Palm Beach condominium, which was jointly owned by Sandra and Celia, and that because Celia had not been to the Palm Beach condominium since sometime during the year 2001, it was unlikely that the improvements at the condominium would have benefitted anyone other than Sandra or Barash. (DE 70, pg. 5, exh. D). Next, the probate court noted that Sandra and Barash benefitted from over eighty-six thousand dollars ($86,000.00) in credit card payments from the trust account, that no evidence showed that such payments were for the benefit of Celia. (DE 70, pg. 6, exh. D). In addition, the court noted that almost two hundred thousand dollars ($200,-000.00) worth of stocks were transferred out of the Celia Kates Trust, and that the law firm representing Sandra and Barash was paid over eleven thousand dollars ($11,000.00) from the Celia Kates Trust account. (DE 70, pg. 6, exh. D). Finally, the probate court ordered that the attorney's fees for the corporate trustee should be paid out of Sandra's subtrust. (DE 70, pg. 6, exh. D). Although Barash and Sandra appealed the probate court's order that the attorney's fees for the corporate trustee be paid out of Sandra's subtrust, in case number 4D04–3353, the appellate court affirmed the order of the probate court. (DE 66, pg. 5; DE 70, pg. 6, exh. E).

(10) Turning back now to Barash's efforts to collect on the forty-thousand

dollar ($40,000.00) promissory note, on an unspecified date in the year 2004, in case number 04–F796 (CBS), in the United States District Court for the District of Colorado, Barash filed an action against Eric, wherein Barash claimed that Eric had forged Todd's signature on the promissory note. (DE 66, pg. 6; DE 70, pg. 11). Subsequent to commencement of the action, Barash executed an agreement with Gloria, whereby Gloria agreed to opt out of any action against the corporate trustee for the Irving Kates trust for the alleged mismanagement of trust funds, in exchange for Barash's dismissal of his action against Eric. (DE 65, pg. 7; DE 70, pg. 8).

However, prior to dismissal of the action, Barash moved for leave to amend the complaint to add a cause of action for the homicide of Richard Howsam ("Howsam"), Eric's former business partner, as well as to add additional parties unrelated to the promissory note. (DE 70, pg. 11). Upon learning of Barash's allegations that Eric was involved with the death of Howsam, counsel for Gloria obtained a copy of the police file from the Greenwood Police Department of Greenwood, Colorado. (DE 70, pg. 11). In the file, counsel found a letter dated July 11, 2001, drafted by Barash, with an attached letter containing a forged signature of Paul by Barash. (DE 70, pg. 11; DE 50, Defendant's exh. 20).[2] A review of the police file showed that Barash had been trying to convince the police to investigate both Paul and Eric for the death of Howsam, and that Barash sent letters to both Howsam's widow and son in an attempt to obtain information about Howsam's death. (DE 70, pg. 11). The police file also contained three additional letters: (a) a letter from Barash to the United States Securities and Exchange Commission wherein he stated that certain documents filed with the SEC had been examined to ascertain a motive for the unsolved homicide of Howsam, and that such documents appeared "suspect;" (b) a letter from Barash to Metropolitan Life Insurance, wherein Barash represented that he was a private investigator investigating the death of Howsam; and, (c) a letter from Barash to Travelers Insurance wherein Barash again represented himself as a private investigator investigating Howsam's death, and requesting information regarding certain insurance policies. (DE 70, pg. 11, exhs. L, M). In an affidavit submitted by Barash in response to the Court's Order to Show Cause, Barash readily admits to portraying himself as a private investigator in such letters. (DE 71, pg. 31).[3]

---

2. Defendant introduced a copy of the letter into evidence at the bench trial herein, and it was designated as Defendant's Exhibit 20. (DE 70, pg. 11; DE 50, Defendant's exh. 20). The letter will be discussed in more detail below.

3. It should be noted that during his cross and redirect examination at trial, Barash admitted that he sent the letter to Detective John Carr of the Greenwood Police Department in Greenwood, Colorado. (DE 52, pgs. 172–174, 216–218; DE 50, Defendant's exh. 20). In the letter, referring to the unsolved investigation into Howsam's death, Barash stated that "the only way to crack this difficult case,

[*sic*] might be with some trickery." (DE 50, Defendant's exh. 20). Barash continued, "[t]he following suggestions are only that. It is what I might resort to if I were faced with the situation." (DE 50, Defendant's exh. 20). Among the suggestions given to Detective Carr, Barash suggested that the detective call in Eric Siler for an interview, and that during the interview, the detective should show Eric a .45 caliber handgun, marked as if it were a piece of evidence in the case, and tell Eric that his DNA was found on the gun to "bluff" him. (DE 50, Defendant's exh. 20). Barash then suggested that Detective Carr show Eric a statement purportedly given by Paul and ask Eric for any comments on the statement.

Barash proceeded *pro se* in nine (9) of the above detailed actions. (DE 66, pgs. 2, 3, 4, 6; DE 70, exh. D, pg. 8; DE 70, exh. E; DE 70, exh. J).

Moreover, since obtaining his *pro se* status in this case, Barash has filed countless pleadings, all of which are ramblings with few or no citations to relevant legal authorities. Since the date that this Court ordered Barash to be sanctioned, he has filed no less than nine (9) motions attempting to relitigate the ruling. (DEs 94, 97, 103, 105, 112, 114, 118, 120, 134). Almost every motion filed by Barash is accompanied by an unnecessary notice of a motion, thereby cluttering the docket even more. (DEs 96, 104, 110, 113, 115, 117, 119, 121, 131). Barash has ignored previous Orders of this Court. (DE 95; ordering Barash to cease sending all correspondence to chambers directly; DE 129; *same*).

Finally, and perhaps most importantly, many of Barash's pleadings also contain inappropriate personal attacks upon Defendant and her counsel. Barash has repeatedly called Defendant and her counsel liars and has accused them of intentionally submitting fraudulent documents to the court. (DE 112, 118, 133, 134, 137, 138, 140, 142). Some of his pleading contain titles such as "Notice to the Court of Proof that Defendant Lied . . .", or "Motion Pursuant to the Inherent Power of the Court to Punish the Defendant's Attorney for Lying to the Court . . .", and contain statements such as "[t]he Defendant, having been caught lying to this Court," and "in a desperate effort to cover up the lies about the ownership of this property . . ." (DE 134; DE 140; DE 142, pgs. 1–2). Such

pleadings contain nothing other than personal attacks upon Defendant and her counsel, with no citation to legal authority. (DE 134, 140, 142).

Eleventh Circuit precedent and the foregoing circumstances lead to a conclusion that Defendant's Motion to Enjoin Frivolous Pleadings by Plaintiff, Philip Barash, should be **GRANTED.** (DE 141). Barash's numerous filings, attempts to relitigate the issue of whether sanctions ought to be imposed, and personal attacks upon Defendant and her counsel serve only to harass Defendant and her counsel, as well as to flood the Court with a deluge of papers in an effort to preclude this Court from deciding the one legal issue which remains: how much of a sanction to impose upon Barash for his purposefully deceptive testimony before this Court in the underlying bench trial.

### *CONCLUSION*

In conclusion, **IT IS HEREBY ORDERED THAT** Defendant's Motion is **GRANTED.** (DE 141). **IT IS FURTHER ORDERED THAT:**

1.) Philip Barash is **ORDERED** to cease filing any further pleadings unless Ordered by this Court, or unless prior approval is obtained by this Court.

2.) In order to obtain court approval to file any pleading, Philip Barash is **ORDERED** to abide by the following procedure. Failure to follow such procedure may result in the dismissal, striking, or denial of the Motion or offending pleading, or other sanctions.

(DE 50, Defendant's exh. 20). In his letter to the detective, Barash acknowledged that the statement purportedly signed by Paul was "phony." (DE 50, Defendant's exh. 20). In the "phony" statement, Paul purportedly stated that he was with Eric when Eric murdered Howsam, and that Eric offered to pay Paul one million dollars ($1,000,000.00) for Paul's

silence. (DE 50, Defendant's exh. 20). Moreover, although in his letter to the detective, Barash stated that he traced Paul's signature from an SEC document, during cross examination at trial, Barash testified, "I did not trace his signature, I copied the signature from an SEC document." (DE 50, Defendant's exh. 20; DE 52, pg. 173).

**First,** Barash shall file with the Court a "Motion for Court Approval to File Pleading," wherein he shall (a) state that he seeks the Court's approval to file a particular pleading; (b) explain the legal purpose or basis of the pleading; and, (3) describe the nature of the pleading with specificity.

**Second,** Barash shall attach as a clearly labeled exhibit to the "Motion for Court Approval to File Pleading" the pleading he seeks to file.

**Third,** the filing of any "Motion for Court Approval to File Pleading" shall also comply with all aspects of the Federal Rules of Civil Procedure, as well as the Local Rules for the Southern District of Florida (including service on Defendant, the submission of motions only to the Clerk of Court, and no direct correspondence to Chambers).

3.) This Order shall apply to Barash and anyone working in concert with him, at his direction, or at his behest, including, but not limited to his wife Sandra, or any other family members, friends, associates, or acquaintances.

4.) **IT IS FURTHER ORDERED THAT** Defendant Kates need not respond to any of Barash's filings which may be filed subsequent to this Order, unless Ordered by this Court.

5.) Any violations of this Order may result in sanctions.