FILED
United States Court of Appeals
Tenth Circuit

May 9, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

THERESA WELCH,

        Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

        Respondent - Appellee.

No. 13-1195
(D.C. No. 1:12-CV-00818-CMA)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

Theresa Welch appeals the district court's order affirming the Commissioner's decision denying her application for disability insurance benefits. We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), and we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

I. BACKGROUND

Ms. Welch applied for disability benefits in 2008 for right shoulder and neck impairments stemming from a work accident in 2005. She alleged an onset date of January 1, 2005, and was eligible through the date she was last insured for benefits, March 31, 2008. Her application was denied. Ms. Welch then requested a hearing before an administrative law judge ("ALJ"), which was held in 2010.

Following the hearing, the ALJ found Ms. Welch had the severe impairments from a disc bulge at C5 and C6 vertebrae, right shoulder pain, thrombocytosis, depression, and drug and alcohol abuse. Based on these impairments, the ALJ found that Ms. Welch had the residual functional capacity ("RFC") to perform light work with certain limitations: she could only occasionally push and pull with her upper extremities, needed to avoid reaching overhead, and was limited to simple and unskilled work with one-, two-, or three-step instructions.

Despite finding that Ms. Welch's limitations prevented her from performing her past work at step four of the five-step evaluation process, the ALJ found at step five that she could perform other work that exists in significant numbers in the economy. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (describing five-step sequential process). Thus, the ALJ concluded that Ms. Welch was not disabled. Ms. Welch appealed, but the Appeals Council denied review and the district court affirmed the ALJ's decision. Ms. Welch now appeals to this court, arguing that the ALJ (1) failed to properly determine her RFC and (2) improperly

erred at step five by relying on the vocational expert's answer to the ALJ's hypothetical.

## II. DISCUSSION

"We review the Commissioner's decision to determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (internal quotation marks omitted). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal quotation marks omitted). In determining whether substantial evidence supports the agency's decision, we examine the record as a whole but we do not reweigh the evidence. *Id.*

### A. RFC Determination

#### 1. Medical Evidence

Ms. Welch first argues that the ALJ failed to explain the weight she gave to the medical opinions of Drs. Sramek, Schulze, and Young. "Medical opinions are statements from . . . medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). However, as the Commissioner points out, none of the physicians Ms. Welch identifies provided medical opinions about her

that, given her impairments, the ALJ was required to weigh. Rather, each physician simply diagnosed her impairments and in some cases recommended treatment for them.

For example, Dr. Sramek stated Ms. Welch had right neck pain, "numbness and weakness in [her] C5 and C6 distributions," and recommended surgery as a result of those symptoms. Aplt. App. Vol. I at 225. Dr. Sramek also noted Ms. Welch's reported pain and her psychological issues with mood changes, sleep disturbance, and difficulty coping. Dr. Young noted her neck and shoulder pain, as well as her high platelet count (thrombocytosis) that required cancelling her scheduled neck surgery. Dr. Schulze likewise noted her thrombocytosis and a rotator cuff tear, and advised surgery. None of the physicians, however, opined on Ms. Welch's limitations resulting from her impairments except that Drs. Sramek and Schulze excused Ms. Welch from working for short periods of time.[1] As to the impairments themselves, the ALJ appropriately addressed each one and incorporated limitations based on them into her RFC finding. We therefore find no error in the ALJ's not weighing the physicians' "opinions." *See Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (finding doctor's statement providing no information about the nature and severity of the claimant's physical limitations or the activities he could still perform was not a medical opinion).

---

[1]     Specifically, Dr. Sramek wrote that Ms. Welch could not work from March 2005 through May 2005, and Dr. Schulze wrote that she could not work in June 2005.

We also find no merit in Ms. Welch's contention that the ALJ ignored her need for surgery when she assessed her RFC. On the contrary, the ALJ twice noted that Ms. Welch had been scheduled for surgery but that the surgery was postponed due to her elevated platelet count. Aplt. App. Vol. I at 20, 23. We are thus satisfied that the ALJ properly considered the need for surgery when she gave "careful consideration of the entire record" in determining Ms. Welch's RFC. *Id.* at 23.

### 2. Credibility Assessment

Ms. Welch additionally argues that the ALJ improperly relied on treatment gaps and inconsistencies between the medical evidence and her stated activities of daily living to find that the alleged intensity of her stated limitations was not fully credible. But the medical record indeed shows gaps in Ms. Welch's treatment records, specifically from August 2007 until September 2008, which Ms. Welch does not dispute. The record also shows that Ms. Welch testified she could do light yard work, light chores, light cooking, grocery shop, drive, and visit her family despite her impairments. Lack of treatment and a claimant's daily activities are both proper considerations as part of a credibility determination. *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000); *Wilson*, 602 F.3d at 1146. Thus, the ALJ adequately tied her credibility finding to substantial evidence in the record. Given the deference we accord credibility determinations that are supported by substantial evidence, *see Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302 (10th Cir. 2011), we must conclude the ALJ's credibility determination was not improper.

### 3. Combined Effects of Impairments

Ms. Welch additionally contends the ALJ failed to consider the combined effects of all her non-severe impairments with her severe impairments. She specifically points to such non-severe impairments as gastrointestinal problems, chronic pain, a hernia, chest pain, post-traumatic stress disorder ("PTSD"), and suicidal tendencies. However, Ms. Welch does not identify how any of these impairments affected her functioning during the time she claims she was disabled, either individually or in combination with each other. *See* 20 C.F.R. § 404.1512(c). Further, there was no other medical evidence that these complications restricted her ability to work. Thus, even if the ALJ did err, such error is harmless because Ms. Welch fails to identify—and we do not discern—any resulting prejudice.

### 4. Mental Impairments

Ms. Welch argues the ALJ should have ordered a consultative psychological evaluation because her suicide attempt in 2010 should have indicated to the Commissioner a "reasonable possibility of the existence of a disability." *See Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (holding that an ALJ should order a consultative evaluation when a reasonable possibility of the existence of a disability exists and the evaluation would materially assist resolving the issue of disability). An ALJ is obligated to order a consultative evaluation only when the medical sources on record are insufficient to allow the ALJ to make a disability determination. 20 C.F.R. § 404.1517. Here, the ALJ noted Ms. Welch possessed a

record that "was fully developed with records from treating sources," thus allowing the ALJ to make a disability determination without the use of an evaluation. Aplt. App. Vol. I at 18. The record included numerous psychological diagnoses and treatments, including for depression and anxiety, which were both accounted for in the ALJ's RFC. Further, the ALJ also reasoned that an evaluation conducted over two years after the date last insured would "shed little light" on Ms. Welch's status during the relevant time period. Aplt. App. Vol. I at 17. It is evident that the ALJ possessed record evidence sufficient to make a disability determination and would not have been materially assisted by a consultative evaluation.

Ms. Welch also contends that the Commissioner erred by failing to assess her PTSD. She claims that, although her PTSD was not diagnosed until two years after her date last insured, the origins of her PTSD go back to sexual assaults that occurred in 2007 and her accident in 2005. She asserts that the Commissioner improperly rejected the opinion of Dr. Robbins, who diagnosed her with PTSD in 2010. Dr. Robbins's August 2010 PTSD diagnosis was not before the ALJ but was submitted to the Appeals Council, which denied review. The Commissioner, meanwhile, argues that Ms. Welch's argument is unavailing because Dr. Robbins's opinion does not change the weight of the evidence both because it is unreliable or inaccurate and because there is no evidence Ms. Welch had PTSD before the date she was last insured. We agree.

There is nothing in the record gathered before the date Ms. Welch was last insured that suggests Ms. Welch suffered from PTSD. While she undoubtedly suffered from psychological problems such as depression and anxiety, none of the doctors who evaluated her mental health mentioned anything about PTSD before 2010. It is true Dr. Robbins stated that the "likely beginning effective date" for Ms. Welch's limitations, including those induced by PTSD, was August 2006. *Id.* at 528. But in the same report, Dr. Robbins wrote that the traumatic event which caused Ms. Welch's PTSD did not occur until July 2007, exhibiting an inconsistency in her opinion. Moreover, Dr. Robbins's report was not created until two years after the relevant time period ended (and after the ALJ issued her decision). We may conclude the Appeals Council erred in denying review based on the new evidence only if the new evidence provides a basis for changing the ALJ's decision. *See O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Here, given the lack of more chronologically relevant evidence of PTSD and the fact that the RFC accounted for Ms. Welch's mental limitations, we cannot say that the evaluation required a change in the outcome. The Commissioner was therefore reasonable in deciding to affirm the ALJ's findings despite the results of Dr. Robbins's psychological evaluation.

B. Step Five

At step five of the sequential process, an ALJ is required to consider whether, given a claimant's background and RFC, the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(g). Ms. Welch argues that the ALJ was not justified in relying on the vocational expert's answers to the ALJ's hypothetical because the hypothetical did not accurately capture all of Ms. Welch's impairments. But we have already affirmed the ALJ's findings regarding the nature and extent of Ms. Welch's impairments in rejecting her challenges to the ALJ's RFC determination. And the ALJ's hypothetical question included an accurate recitation of Ms. Welch's limitations. "Because these findings are adequately reflected in the ALJ's hypothetical inquiries to the vocational expert, the expert's testimony provided a proper basis for adverse determination of this case." *See Gay v. Sullivan*, 986 F.2d 1336, 1340-41 (10th Cir. 1993) (citation omitted).

The judgment of the district court is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge